# Staunton

J. Arnold Zirkle v. Commonwealth of Virginia.

September 7, 1949.

Record No. 3554.

Present, All the Justices.

The opinion states the case.

*William Kinckle Allen* and *William M. McClenny*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Ballard Baker, Assistant Attorney General,* for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

J. Arnold Zirkle, by this writ of error, seeks to have reversed a judgment entered on the verdict of the jury finding him guilty of involuntary manslaughter and imposing a fine of $1,000 for the unlawful and felonious killing of Charlie Coffey.

On February 25, 1948, Zirkle, hereinafter designated as the accused, with Charlie Coffey riding on the front seat as his guest, left Lynchburg driving his brother's 1941 Ford automobile north *en route* to his home in Nelson county. As he reached the crest of a hill between Amherst and Lovingston, on Route 158, an automobile driven by Charlie Bowling was rounding a curve approximately 1,000 feet away, approaching from the opposite direction. The two automobiles collided approximately midway between the crest of the hill and the curve. Charlie Coffey died as a result of injuries received in the collision.

Only three of the six assignments of error stated in the petition are based on proper exceptions taken to the different rulings of the trial court. These are (1) that the verdict was contrary to the law and the evidence; (2) the admission of improper evidence, and (3) the refusal of the court to grant defendant's Instructions F and J.

At the scene of the accident the hard-surfaced portion of the highway was 20 feet wide, and there was a dirt shoulder on the west four feet wide and on the east eight feet wide. Down the center of the highway were two unbroken white lines four inches apart. The time was approximately 6:15 p. m., between sunset and dark. Parking lights or dimmers were burning on both cars. There was no obstruction to the view of the drivers as they approached each other traveling 35 to 40 miles per hour.

The operators of the two vehicles were the only eye-witnesses to the accident. Their testimony is conflict-

ing. Bowling's testimony supports the theory of the Commonwealth, and, when considered with other evidence, is sufficient to support the verdict. If the jury had believed the testimony of the accused and the corroborating testimony of his witnesses, it would have been compelled to return a verdict of not guilty.

Stating the evidence from the point of view of the Commonwealth, it appears that, as the accused came over the crest of the hill, he was driving on the east, or his side of the highway, but after he passed the crest his car zigzagged, or swayed, across the center of the road. When the cars were approximately 75 feet apart, the accused was driving on the west, or his wrong side of the road, with his automobile entirely in the south-bound traffic lane. Bowling, a witness for the Commonwealth, said: "this scared me and at the time I did not see no other chance to save my life but to cut to my left." This he says he did. At approximately the same time the accused turned his car sharply to his right (east), and struck the Bowling car just after its left front wheel had crossed the center line into the north-bound traffic lane.

The Bowling automobile came to rest on the east side of the highway with its two left wheels off the hard surface. The left front wheel was on the shoulder about two feet and the left rear wheel on the shoulder about a foot farther—that is, the automobile stopped not quite parallel with the highway. The automobile operated by the accused stopped at right angles to, or crosswise of the highway, with its rear bumper against the bank on the west side and the front within two feet of the white lines or center of the highway.

Accused testified that as he came over the crest of the hill he saw the Bowling automobile rounding the curve approximately 1,000 feet away, with his automobile approximately 18 inches to his left of the center of the road in the north-bound traffic lane; Bowling continued to drive his car in this position on the highway until the cars were within 50 feet of each other, when Bowling, instead of

turning to his right in the south-bound traffic lane, "cut right short across in front of me. * * * when he did that, when he cut short to the right I aimed to cut mine back to the left but we were so close together I am satisfied I didn't get anywhere from where I cut them. I am satisfied I never got as far as the center of the road when we hit."

There was testimony tending to show that the accused had been drinking and was more or less under the influence of intoxicants. This he denied and introduced several witnesses who corroborated him in this particular.

The accused contends that the evidence for the Commonwealth was insufficient to prove that he was guilty of criminal negligence, unless it was proven beyond a reasonable doubt that he was driving under the influence of intoxicants.

██ We do not agree with this contention. As we view the evidence, the dominant issue is not whether the accused was drunk or sober, but whether he was operating his automobile in the manner that the evidence for the Commonwealth tended to prove that he was. The testimony as to whether he was under the influence of intoxicants was material, but not controlling.

We have held in numerous cases that the negligence required to be proven in a criminal proceeding must be more than the lack of ordinary care and caution. It must be something more than mere inadvertence or misadventure. As Mr. Justice Spratley said in *Bell* v. *Commonwealth*, 170 Va. 597, 611, 195 S. E. 675, "It (criminal negligence) is a recklessness or indifference incompatible with a proper regard for human life. It must be shown that a homicide was not improbable under all of the facts existing at the time, and that the knowledge of such facts should have had an influence on the conduct of the offender. 99 A. L. R. 829; 5 Am. Jur. 927; *Cain* v. *State*, 55 Ga. App. 376, 190 S. E. 371."

Mr. Chief Justice Prentis, in *Goodman* v. *Commonwealth*, 153 Va. 943, 151 S. E. 168, 171, dealing with a similar situation, said:

"The precise grade of such a homicide, whether murder

or manslaughter, depends upon the facts of the particular case. One, however, who accidentally kills another, even though he may be chargeable with some actionable negligence, is not guilty of a crime, unless his negligence is so gross and culpable as to indicate a callous disregard of human life and of the probable consequences of his act. The crime is imputed because of recklessness, and where there is no recklessness there is no crime."

The statute, section 2154(108)(a), Michie's Code 1942, provides: "Irrespective of the maximum speeds herein provided, any person who drives a vehicle upon a highway recklessly, or at a speed or in a manner so as to endanger life, limb or property of any person shall be guilty of reckless driving; provided that the driving of a motor vehicle in violation of any speed limit provision of section 2154-(109), shall not of itself constitute ground for prosecution for reckless driving under this section."

The testimony of the Commonwealth was to the effect that the accused operated his vehicle in such manner that it zigzagged across the center of the highway; that as it neared the scene of the accident it was being driven entirely on the wrong side of the road in the south-bound traffic lane in plain view of the automobile approaching from the opposite direction, and that the accused failed to turn into the north-bound traffic lane until too late to avoid a head-on collision. This evidence, if believed, proved that the accused was guilty of more than inadvertence or ordinary negligence. It was sufficient to convict him of negligence so gross and culpable as to indicate a careless disregard of human life and of the probable consequences of his act. See *Salyer* v. *Commonwealth*, 165 Va. 744, 181 S. E. 435.

The accused further contends that the testimony of Charlie Bowling is incredible. We find nothing incredible in it. When considered as a whole, it is not inconsistent with the physical facts at the scene of the collision as described by other witnesses. It is true that two of his statements as to the position of the car of the accused just before the impact were inconsistent and somewhat con-

tradictory of two other statements made by him on the preliminary hearing of the criminal charge.

The accused was likewise contradicted in at least one particular—that is, when questioned by State Policéman Payne, he stated that he did not drink any beer on the day of the accident, but while on the stand he admitted drinking two bottles of beer on that day.

■ The credibility of witnesses is a question exclusively for the jury, and where a number of witnesses testify directly opposite to each other, the jury is not bound to regard the weight of the evidence as equally balanced, they have the right to determine from the appearance of the witnesses on the stand, their manner of testifying, and their apparent candor and fairness, their apparent intelligence, or lack of intelligence, and from all the other surrounding circumstances appearing on the trial, which witnesses are more worthy of credit, and to give credit accordingly. In this case the court instructed the jury that if they believed any of the witnesses had knowingly testified falsely on any material fact they had a right to discredit all testimony of such witnesses or to give their testimony such weight and credit as in their opinion it was entitled to. This instruction, of course, applied to the testimony of all witnesses, whether called by the Commonwealth or the accused.

Several witnesses for the accused testified that he bore a good reputation for truth, veracity and sobriety. None of the character witnesses were cross-examined as to any particular facts, rumors or reports concerning the character of the accused. In rebuttal, the Commonwealth called J. B. Massie, trial justice of Nelson county, who was asked if he knew the reputation of the accused for sobriety. His reply was, "I know of specific instances, but not (his) general reputation in the community." The Commonwealth then had this witness verify a record showing that on the 17th day of February, 1941, (seven years prevous to the trial of this case) he had convicted the accused of driving a motor vehicle on a highway under the influence of intoxicants. The punishment imposed was a fine of $100 and confinement

in jail for one month. The fine was paid and the jail sentence suspended.

The court overruled the objection of the accused to the introduction of this prior judgment of conviction, on the ground that it was admissible to rebut the testimony of the good general reputation of the accused for sobriety.

The precise question presented is whether extrinsic proof of a specific act of bad conduct is admissible to rebut testimony tending to establish the good reputation of the accused for the pertinent traits of character involved.

Henry Ward Beecher well said: "Character is what one really is; reputation is what others believe him to be." Usually, in legal parlance, where reference is made to the character of the accused, "character" is used as a synonym for "reputation."

A person on trial for a criminal offense has the right to introduce evidence of his good character, on the theory that it is improbable that a person who bears a good reputation would be likely to commit the crime charged against him. Evidence of this nature may be considered and weighed by the jury in determining his guilt or innocence, and, in a proper case, the punishment to be imposed. On the other hand, the Commonwealth is not permitted to introduce any testimony of the bad reputation of the accused until the accused has put the pertinent traits of his character in issue.

The accused, in order to establish good character, is not permitted to prove specific acts, custom or course of conduct. He is confined to proof of the opinion that the people of the community have of him. His specific acts, customs, conduct, etc., create this opinion. It is the sum total of all of these things—that is, the consensus of opinion of the people of the community in which he lives that is considered pertinent and proper evidence to prove character. It follows that character, whether good or bad, must be proven either by hearsay testimony, or negative testimony. Negative evidence of good character is admitted on the theory that his reputation is presumed to be good where

"no slanderer has ever ventured even so much as to question it."

█ Both the accused and the Commonwealth are allowed wide latitude on cross-examination of character witnesses. However, the purpose of such cross-examination is to ascertain whether the witness in fact knows the reputation of the accused, and to test the estimate or standard of the witness as to what constitutes good character. See *State* v. *Lyles*, 210 S. C. 87, 41 S. E. (2d) 625; Annotation 71 A. L. R. 1504. No hard or definite rule can be stated which is applicable to all cases; hence the matter, to a large extent, is left to the sound discretion of the trial judge.[1]

This phase of the question was not raised in this case, because no pertinent questions on the subject were asked the character witnesses on cross-examination. On this specific question see *Kanter* v. *Com.*, 171 Va. 524, 199 S. E. 477; *State* v. *Lyles*, 210 S. C. 87, 41 S. E. (2d) 625; *Spalitto* v. *United States*, 39 F. (2d) 782; *State* v. *Shepherd*, 220 N. C. 377, 17 S. E. (2d) 469; *Michelson* v. *United States*, 335 U. S. 469, 69 S. Ct. 213, 93 L. ed. 160.

█ The prior conviction of the accused proven by the Commonwealth was for a separate and distinct offense, wholly unconnected with that for which he was then on trial. It was not admissible as tending to establish his guilt or his innocence. It was not admissible for the purpose of impeaching the credibility of the accused. It was introduced, as the Commonwealth contends, for the sole purpose of rebutting evidence of his good character. But the Commonwealth offered no instruction and the court gave none, limiting the jury in its consideration of the proof. They could, and very probably did, consider and weigh it in determining the guilt of the accused.

The admission of this evidence was highly prejudicial. "One swallow maketh not (a) summer." One drink maketh not a drunkard. One drunk within a seven-year period maketh not an inebriate.

---

[1] "The discretion vested in the trial court as to such questions is not an unlimited discretion, but can be reviewed, and will justify a reversal in extreme cases." *Beavers* v. *Commonwealth*, 147 Va. 585, 590, 136 S. E. 501.

 The basis of the rule forbidding proof of a prior conviction on the trial of an accused charged with the commission of a subsequent offense, wholly unconnected with the prior offense, is, that a jury might give too much weight to such proof in determining the guilt or innocence of the accused. The tendency to believe that a person who has committed a former crime of the same nature is very probably guilty of the crime charged is a frailty of human nature not restricted to jurors. Even so, in fairness to a person charged with one offense and to prevent the multiplicity of issues, he is not, and should not be, required to come into court prepared to meet other charges of which he has had no notice. Hence the Commonwealth is usually confined to the introduction of evidence relevant to the charge stated in the indictment.[2]

 The rule prohibiting proof of specific acts of bad conduct, in rebuttal of testimony of good character, is supported by the same reasons forbidding proof of prior conviction of a crime wholly separate and independent of the offense for which the accused is then being tried. This was concisely stated by Judge Brockenbrough, in *Walker* v. *Commonwealth*, 1 Leigh (28 Va.) 574, 576.

"As he (the accused) is charged with a particular offense, he has notice to be prepared to defend himself against that charge, and that alone: he cannot be prepared to defend himself against other charges, not exhibited against him, or to maintain the integrity of his whole life, when that is not put in issue; and when it is, he cannot be prepared to account for particular instances of malconduct, of which he is not previously informed, and as to which he is not required to defend himself."

Judge Burks, speaking for the court in *Harold* v. *Commonwealth*, 147 Va. 617, 622, 136 S. E. 658, repeated the principle in the following language:

"Whatever may be the rule elsewhere, it is well settled

---

[2] To the general rule there are many important exceptions not pertinent to this case. Underhill on Criminal Evidence, 4th Ed., Proof of Other Crimes, Ch. 17, sec. 180, p. 310.

in this State that the character of a witness for veracity cannot be impeached by proof of a prior conviction of crime, unless the crime be one which involved the character of the witness for veracity. Nor can a witness be impeached by proof of collateral facts irrelevant to the issue, though they have a bearing on the question of veracity. *Uhl* v. *Commonwealth*, 6 Gratt. (47 Va.) 706; *Langhorne* v. *Commonwealth*, 76 Va. 1012; *Cutchin* v. *Roanoke*, 113 Va. 452, 74 S. E. 403; *Allen* v. *Commonwealth*, 122 Va. 834, 94 S. E. 783."

Judge Holt, in *Barber* v. *Commonwealth*, 182 Va. 858, 866, 30 S. E. (2d) 565, said:

"The accused comes to trial to meet the specific charge against him, not to vindicate or to explain every collateral charge against him made in the course of the introduction of the evidence. His general reputation for specific traits of character he is always presumed to be ready to vindicate, but to require him to meet such a charge as was made by the witness, Lillian Lane, would be an unfair surprise to him, would unduly prejudice his case before the jury, and if the details of his denial were gone into would unduly protract the trial and have a tendency to confuse the issue the jury were sworn to try. His general reputation as to his intercourse with women was a legitimate subject of inquiry, but not the specific assault alleged." See *Dean* v. *Commonwealth, ante*, p. 426, 53 S. E. (2d) 141; *Jones* v. *LaCrosse*, 180 Va. 406, 23 S. E. (2d) 142; *Burford* v. *Commonwealth*, 179 Va. 752, 20 S. E. (2d) 509; *Bell* v. *Commonwealth*, 167 Va. 526, 189 S. E. 441; *Smith* v. *Commonwealth*, 155 Va. 1111, 1121, 156 S. E. 577; *Webb* v. *Commonwealth*, 154 Va. 866, 152 S. E. 366; *Thurpin* v. *Commonwealth*, 147 Va. 709, 137 S. E. 528; *Barbour* v. *Commonwealth*, 80 Va. 287.

A contrary view is expressed in *Commonwealth* v. *Harvie*, 345 Pa. 516, 28 A. (2d) 926. There the court said:

"It is well settled that when a defendant puts his character (i. e., his general reputation) in issue, as did the defendant here, it must be shown by the records of a court that he had been convicted of a crime."

This decision was severely criticized in 49 Dickinson Law Review, pp. 25-29, in which a number of former decisions of that court were quoted as holding exactly contrary to the view expressed in the quotation above.

The rule in Virginia has been applied in many other jurisdictions as the following excerpts and citations of authority indicate:

"Where the good character of the defendant is put in issue, as in the instant case, the State in rebuttal may offer evidence as to his general bad character. In offering proof of the general bad character of the defendant the State is held to the same restrictions as to bad character as the defendant in offering his good character—that is, the State cannot prove specific acts to show the defendant's bad character." *Giles* v. *State*, 71 Ga. App. 736, 737, 32 S. E. (2d) 111.

The facts in *Commonwealth* v. *O'Brien*, 119 Mass. 342, 20 Am. Rep. 325, were that the accused was on trial charged with an assault, with intent to kill one James M. Ellis. Several witnesses introduced by him testified that he had a reputation of being a peaceful, quiet law-abiding person. The Commonwealth, for the purpose of rebutting the evidence of good reputation proven by the accused, introduced the record of a prior conviction of an assault upon another party. Speaking to this point, the court said:

"Where a party undertakes to show that his reputation is good, or that the reputation of the other party or a witness is bad, he cannot put in evidence of particular facts to prove the general reputation he is endeavoring to establish. And to meet evidence of general reputation the opposing party may put in evidence to the contrary of a like general character. But he cannot prove particular facts for the reason that a particular fact does not necessarily establish a general reputation or fairly meet the issue presented, and may also raise collateral issues; and for the further reason that while a party is presumed always to be ready to defend his general reputation, he is not expected to be prepared to

meet a distinct and specific charge. *Peterson* v. *Morgan*, 116 Mass. 350."

"The State has the right to rebut the defendant's evidence and when he has introduced evidence to prove a good character, the State may prove it bad, if it can, either by cross-examination or by other witnesses. * * *

"This right of reply however is only co-extensive with the privilege of the defendant and is limited to evidence of general reputation. If it were extended to particular facts and the opinion of witnesses, it would multiply collateral questions and would lead in many instances to scandalous inquiries and to the embarrassment of the jury. This would be the original evidence in reply." *State* v. *Laxton*, 76 N. C. 216, 218. To the same effect, see *State* v. *Church*, 229 N. C. 718, 51 S. E. (2d) 345; *Davis* v. *State*, 197 Ind. 448, 151 N. E. 329; *State* v. *Nance*, 195 N. C. 47, 141 S. E. 468; Underhill on Criminal Evidence, 4th Ed. sec. 172, p. 302; 22 C. J. S. 1079; 1 Wigmore on Evidence, 3d Ed. pp. 642, 643; 1 Wharton on Criminal Evidence, 11th Ed., pp. 467, 468.

The trial court committed no error in refusing to give Instruction F, requested by the accused. This instruction, in effect, stated that the jury should consider and weigh the testimony of Charlie Bowling with great care and caution because he was an interested party and that, if the accused was convicted, he would be forever free of a criminal prosecution.

The accused contends that the principle involving the testimony of an accomplice should be applied. The reasons supporting the rule which authorizes the court to tell the jury to so consider the testimony of an accomplice are that such testimony is tainted, and that accomplices are prone to exculpate themselves by fixing responsibility of the crime upon others. Bowling was not an accomplice, which is usually defined to be "a person who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime." If a civil action had been pending against him that fact was pertinent to show his

possible interest or bias. The rule applicable to testimony of accomplices should not be extended to cover cases of this class.

The accused states in his petition that the refusal to give Instruction J, requested by him, constitutes reversible error, because it contains a statement of "salient and controlling facts" of the defendant's theory of the case. It is further contended that it is the only instruction that presents the views of the accused *"seriatim."*

The instruction is not well drawn. It is argumentative, misleading, and does not contain a correct statement of the evidence even from the point of view of the accused. For instance, the instruction states the burden is upon the Commonwealth to "prove beyond all reasonable doubt that the Bowling car was not over on the defendant, Zirkle's side of the road." This statement is contrary to the whole theory of the Commonwealth's case. Bowling, as well as the accused, testified that the automobiles collided to the east of the center of the highway. The two witnesses differed as to why this was a fact, but both stated that it was a fact. This alone was sufficient for the court to refuse to give the instruction.

For error in admitting proof of a prior conviction of the accused, the judgment of the trial court is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed and remanded.*