COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Felton and Kelsey
Argued at Richmond, Virginia


MEDAD EL MUHAMMAD

                                    MEMORANDUM OPINION* BY
v.    Record No. 1300-01-2          JUDGE WALTER S. FELTON, JR.
                                         DECEMBER 10, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                    George F. Tidey, Judge

        Craig S. Cooley for appellant.

        Steven A. Witmer, Assistant Attorney General
        (Jerry W. Kilgore, Attorney General, on
        brief), for appellee.


     Medad El Muhammad was convicted in a bench trial of robbery,

in violation of Code § 18.2-58, and unlawful wounding, in

violation of Code § 18.2-51.  On appeal, he contends (1) the

evidence was insufficient to support the convictions of robbery

and unlawful wounding, and (2) the trial court erred in finding

that the indictment for malicious wounding, filed after a

continuance was granted to Muhammad, did not constitute

prosecutorial vindictiveness.  We affirm.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.  BACKGROUND

A.  THE OFFENSES

On March 11, 2000, Henry Taylor set out to cash his payroll check.  He went to a bank on Jefferson Davis Highway, on the southside of Richmond, but found it to be closed.  Returning from the bank, he saw a friend, Jerry Barbour, who was sitting as a passenger in Muhammad's vehicle.  Taylor asked Barbour if he would take him to a bank in Mechanicsville to get his check cashed.  Barbour asked Muhammad, who responded that he did not know because he had to drop some people off.  Muhammad told Taylor that he would be back in five minutes.  Taylor indicated that he only knew Muhammad as "Mike," "Big Mike," or "Iron Mike" and that they had been acquaintances since 1995 or 1996.

Muhammad returned and told Taylor that he would take him and Douglas Ellsworth to the bank for ten dollars each.  Taylor agreed.  He and Ellsworth got into the vehicle with Muhammad, Barbour, and an unidentified male.  Before arriving at the bank, Barbour was dropped off.  Thereafter, Taylor and Ellsworth were brought to the bank where they cashed their checks.  Each provided Muhammad ten dollars for driving, but Muhammad requested an additional ten dollars from each of them.  Taylor paid Muhammad, but Ellsworth refused.

Muhammad began driving back toward the southside at which time Taylor asked if they could stop to pick up some beer.  Muhammad agreed, but instead drove to an area known as Century

-

Garden.  When asked what was going on, Muhammad responded that he was going to "check out some friends, somebody, a relative or somebody."  They drove down a dirt road and stopped.  Muhammad, Ellsworth, and the unidentified man got out of the vehicle and urinated.  Upon returning to the vehicle, Muhammad began fumbling around with his clothing, pulled out a knife, and advanced on Taylor.

Muhammad told Taylor, "You know what this is, man, now, I'm going to kill you."  He then told Taylor to "give it up."  Taylor kicked Muhammad and leaned back as Muhammad tried to stab him in the face.  Taylor yelled for Ellsworth to get out of the car.  Taylor could not get out of the car and struggled with Muhammad until Ellsworth opened the door from the outside.  Taylor fell to the ground and as he stood up, the unidentified man grabbed him by the arm.  Muhammad then stabbed Taylor in the back, telling him to "give it up."  Taylor surrendered $280 in cash.

Muhammad tried to get Taylor back into the vehicle, but he resisted and ran away, falling in a ditch as he began to black out.  Taylor managed to get out of the ditch and saw Edith Seibert driving down the road.  He began "hollering and screaming for somebody to stop [and] to help [him]."  Taylor ran to the side of Seibert's car and begged for her to help him.  He told her he had been robbed and stabbed.  Initially, Seibert thought Taylor was drunk because she observed him fall into the

-

ditch. However, when he approached her car, Seibert saw blood on Taylor's face. Using her cell phone, she called the police then exited her car to help. She saw blood coming from the back of Taylor's shirt.

## B. INVESTIGATION AND TRIAL

Muhammad was initially charged with robbery, in violation of Code § 18.2-58. On December 7, 2000, trial was set to begin. However, Muhammad requested a continuance on the grounds that a material witness, Jerry Barbour, was not present. The trial court granted the continuance, with the Commonwealth's objection noted, and set trial to begin on February 6, 2001. On January 8, 2001, the Commonwealth obtained a direct indictment against Muhammad on the charge of malicious wounding, in violation of Code § 18.2-51.

Prior to trial on February 6, 2001, Muhammad made a motion to dismiss the indictment charging malicious wounding. Muhammad claimed that the charging was a retaliatory action taken by the Commonwealth because he obtained a continuance on December 7, 2000. The charging, he argues, violated his right to due process. After hearing arguments from both parties, the trial court denied Muhammad's motion and continued to trial.

At trial, Investigator Terry Mason testified as to the robbery investigation. On direct examination, he identified photos taken of Taylor's back and facial wounds. He stated that the photos were taken at the scene prior to his arrival, but he

-

observed the wounds at the hospital.  On cross-examination he admitted that in obtaining an identification of Muhammad, he used a single photo.  No photo array was used.  Investigator Mason also admitted that he never took steps to determine if Taylor cashed his check and never spoke to Ellsworth.

Muhammad also testified in his own behalf.  He stated that he did not know Taylor and he never had nicknames of "Mike," "Big Mike," or "Iron Mike."  Further, he denied any knowledge or participation in the robbery and stabbing.  Muhammad was found guilty of robbery, in violation of Code § 18.2-58, and unlawful wounding, in violation of Code § 18.2-51, a lesser-included charge of malicious wounding.

## II.  SUFFICIENCY OF THE EVIDENCE

We first consider whether the evidence was sufficient to convict Muhammad of robbery and unlawful wounding.

> When the sufficiency of the evidence is challenged on appeal, it is well established that we must view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  The conviction will be disturbed only if plainly wrong or without evidence to support it.

Jones v. Commonwealth, 13 Va. App. 566, 572, 414 S.E.2d 193, 196 (1992).  Muhammad claims that the evidence was insufficient to convict him of robbery and unlawful wounding because of a

-

tainted identification and uncorroborated allegations.[1]  We

disagree.

Mr. Taylor testified at trial that he had known Muhammad

for approximately six or seven years.  During that period he had

a few altercations with Muhammad.  Mr. Taylor stated that on

March 11, 2000, after cashing his check, Muhammad threatened him

and Mr. Ellsworth with a knife and demanded money.  Mr. Taylor

struggled with Muhammad and subsequently was stabbed in the

back.  Mr. Taylor identified Muhammad as his assailant.  At the

conclusion of the trial, the trial judge found the case to turn

on the issue of credibility, stating, "It's a credibility issue,

and I, I think Mr. Taylor's testimony is credible."

> The credibility of witnesses is a question
> exclusively for the [judge or] jury, and
> where a number of witnesses testify directly
> opposite to each other, the [judge or] jury
> is not bound to regard the weight of the
> evidence as equally balanced, they have the
> right to determine from the appearance of
> the witnesses on the stand, their manner of
> testifying, and their apparent candor and
> fairness, their apparent intelligence, or
> lack of intelligence, and from all the other
> surrounding circumstances appearing on the
> trial, which witnesses are more worthy of
> credit, and to give credit accordingly.

Zirkle v. Commonwealth, 189 Va. 862, 870, 55 S.E.2d 24, 29

(1949).  Mr. Taylor's testimony, believed by the trial judge,

---

[1] Because Muhammad failed to object to the admissibility of
his identification by Taylor, our consideration is limited to
the weight given by the trial court to Taylor's testimony
identifying Muhammad as his assailant.

-

was sufficient to establish that Muhammad robbed and unlawfully wounded him.

### III.  PROSECUTORIAL VINDICTIVENESS

We next consider whether the Commonwealth engaged in prosecutorial vindictiveness when it obtained an indictment for malicious wounding after a continuance was granted to Muhammad. Muhammad argues that the trial court erred in denying his motion to dismiss the malicious wounding indictment.  He contends that he was denied due process when the Commonwealth vindictively sought an indictment against him for a serious charge, after he successfully obtained a continuance.  We disagree.

In United States v. Goodwin, 457 U.S. 368 (1982), the Supreme Court declined to apply a presumption of prosecutorial vindictiveness in a pretrial setting.  In Goodwin, the defendant moved to set aside the verdict, arguing that his indictment and conviction on a felony charge, after he refused to plead guilty and requested a jury trial on the pending misdemeanor charges, constituted prosecutorial vindictiveness.  Id. at 370.

The Supreme Court held that "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule. . . . '[T]he Due Process Clause is not offended by all possibilities of increased punishment . . . but only by those that pose a realistic likelihood of vindictiveness.'"  Id. at 384 (quoting Blackledge v. Perry, 417 U.S. 21, 27 (1974)).  The Court recognized that:

-

a defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by a jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

. . . A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct . . . . [T]he initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

Id. at 381-82. "To presume that every case is complete at the time an initial charge is filed, however, is to presume that every prosecutor is infallible--an assumption that would ignore the practical restraints imposed by often limited prosecutorial resources." Id. at 382 n.14.

In refusing to apply a presumption of vindictiveness in a pretrial setting, the Supreme Court did not foreclose the possibility that a defendant may, in appropriate circumstances, "prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something the law plainly allowed him to do." Id. at 384. In the case before us, Muhammad must objectively show that the Commonwealth's action of

-

charging him with malicious wounding was motivated by a desire to punish him for obtaining a continuance of his trial date. There is no evidence in the record to support such a finding.

To the contrary, the record reflects a reasonable and non-vindictive explanation for the subsequent indictment. The Commonwealth noted that its failure to indict Muhammad for malicious wounding in November 2000 was an oversight. Once the November grand jury date had passed, the January 2001 grand jury was the next available opportunity. The Commonwealth merely took advantage of Muhammad's request for a continuance to obtain the malicious wounding indictment. The evidence in the record is insufficient to prove actual vindictiveness. Accordingly, the trial court did not err in denying Muhammad's motion to dismiss.

The judgment of the trial court is affirmed.

<u>Affirmed.</u>