**Salem**

DAVID LYNN SNYDER

v.

COMMONWEALTH OF VIRGINIA

No. 1239-88-3

Decided March 20, 1990

COUNSEL

Edward K. Stein (Alderson & Stein, on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—In a trial by jury in the Circuit Court of Alleghany County, David Lynn Snyder was convicted of voluntary manslaughter and sentenced to eight years imprisonment. On appeal, Snyder contends that the trial court abused its discretion by denying his request for a continuance upon determining that there was a violation by the Commonwealth of the court's discovery order. We disagree.

The facts leading to the charge against Snyder may be summarized as follows. On the morning of December 20, 1986, Snyder returned from a trip to Florida to a house in Covington, Virginia, which he shared with Christy Coffey. Later that morning, he went to pick up Coffey at her sister's home in Lexington. They both returned to Covington that afternoon. Later in the afternoon, they had an argument but soon reconciled. That evening, Snyder went to Oliver's Restaurant where he spoke with Julia Bennett, a friend of Coffey. Bennett told Snyder that Coffey had not spent the previous Wednesday night with her while Snyder was away, contrary to what Coffey had told him. Snyder became upset when he heard this information. He continued drinking at the restaurant for more than an hour before leaving.

Snyder returned home around midnight. According to Synder's testimony, when he entered the couple's bedroom, Coffey was

kneeling on the bed. She immediately told him that she had spent Wednesday at her mother's house; she then became upset and started crying. Snyder grabbed her by the shoulders saying, "What's going on? Tell me. What's going on?" He then noticed that the .38 caliber revolver which was usually kept under a pillow, had appeared on the bed. According to his testimony, both Snyder and Coffey grabbed the gun. The gun discharged while in Snyder's hand and pointed at Coffey. Snyder maintained that as he pulled the gun from Coffey's grasp, it discharged and a bullet struck her in the chest.

Snyder was unclear about the events occurring after the gun discharged, but he ultimately called the operator to report the shooting. When the police arrived, they found Coffey lying in the kitchen on top of the gun. Snyder had disassembled the bed and taken it to another room. The bullet fired from the gun was later found in the box springs of the bed. Coffey was taken to the hospital, where she died shortly after her arrival. Snyder was taken to jail.

Deputies Clark and Cale interviewed Snyder on December 21, 1986. He made oral statements to the officers at 1:45 a.m., 4:55 a.m. and 9:04 p.m., and was advised of his rights before each statement. Deputy Clark was present for all of the statements. Deputy Cale was present for the latter two and made notes summarizing those statements.

A warrant charging Synder with murder was issued at 5:05 a.m. on December 21, 1986. A preliminary hearing was held on the warrant on January 8, 1987. Deputy Clark testified at that hearing. The charge was certified to the grand jury which returned an indictment for murder against Synder. The case was then set for trial.

Prior to the trial, defense counsel made a motion for discovery pursuant to Rule 3A:11, requesting any statements made by Snyder to law enforcement officers. The court entered a discovery order and the Commonwealth provided the defense with the summaries of Snyder's oral statements at the 4:55 a.m. and 9:04 p.m. interviews. These summaries were written by Deputy Cale, who was present for both statements, but were designated in the Commonwealth's discovery response as "[s]ummar[ies] of oral statement[s] to Deputy Darrell Clark on 12/21/86 . . . ."

Deputy Clark was the first witness called to testify at the trial. During cross-examination by defense counsel, Deputy Clark produced his own notes of the three oral statements, notes which he had rewritten from notes taken during the interviews. At this point, defense counsel asked for the jury to be sent out and then informed the court that the notes Deputy Clark was using had not been produced before trial under the court's discovery order. Defense counsel argued that these notes referred to the first statement made at 1:45 a.m., of which he had previously been unaware.

The Commonwealth's Attorney advised the court that he also had not known of the 1:45 a.m. statement until the Friday before trial. At that time, he had directed the Sheriff's Department deputies on duty to photocopy the statement and deliver it to defense counsel. He also noted that there was no new information in that statement that had not been testified to in the preliminary hearing.

Defense counsel asserted that Deputy Clark's trial testimony differed significantly from the summaries provided under the discovery order. Defense counsel pointed out that Clark testified at trial that Snyder said Christy Coffey had grabbed the *barrel* of the gun, but the summaries provided under the discovery order stated that Snyder said she grabbed the *gun*. After hearing this discussion, the court took a recess to compare the two sets of notes. Counsel and the court discussed the matter off the record in chambers, then returned to the courtroom. The court then asked defense counsel if he wished to "take a few minutes and review [the notes]" before proceeding with the trial. Defense counsel refused a recess and noted for the record that he had moved for a mistrial and in the alternative had moved for a continuance, both of which had been denied. The sole issue presented in this appeal is whether the trial court's denial of defense counsel's request for a continuance was an abuse of discretion constituting reversible error.

Whether a continuance is requested before trial or during the trial, the decision to grant or deny a continuance lies in the sound discretion of the trial court. *Bennett v. Commonwealth*, 236 Va. 448, 459, 374 S.E.2d 303, 310 (1988), *cert. denied*, 490 U.S. 1028 (1989). This discretion must be exercised in a manner which does not prejudice the defendant's right to a fair and impartial

trial or deprive him of his constitutional right "to call for evidence in his favor." Va. Const. art. I, § 8; *Lomax v. Commonwealth*, 228 Va. 168, 172, 319 S.E.2d 763, 765 (1984); *Gilchrist v. Commonwealth*, 227 Va. 540, 546, 317 S.E.2d 784, 787 (1984). The defendant's rights are prejudiced if he is denied the opportunity "to investigate and evaluate the evidence in preparation for trial." *Lomax*, 228 Va. at 172, 319 S.E.2d at 765.

In both *Lomax* and *Gilchrist*, the Supreme Court reversed and remanded the cases because the trial court's refusal of a continuance when discovery violations became apparent prior to trial prejudiced the fairness of the defendants' trials. In *Lomax*, the last disclosed evidence was a toxicological report establishing that the victim's blood contained an excessive amount of a drug which could cause aggressive behavior. In *Gilchrist*, the defense was deprived of numerous scientific reports and forensic results until less than a week before trial. The Commonwealth disclosed some evidence on the day before trial and produced other material for the first time at trial; some of the materials specified in the discovery order were never submitted.

The discovery violation in this case was not as egregious as those in *Lomax* and *Gilchrist*. Although Clark's notes were produced for the first time at trial, they contained no new information critical to the case. Deputy Clark's notes of the undisclosed 1:45 a.m. statement were as follows:

Mr. Snyder could only tell me that things happened so fast. He repeated that they were in the bed arguing, and that the gun, which was kept under a pillow on the bed, just appeared and that he went for it first. After the gun discharged, he was unclear about anything else.

The information disclosed by the notes of the 1:45 a.m. interview was disclosed by Clark at the preliminary hearing and was contained in the notes actually produced under the discovery order. The only difference in the accounts of Snyder's statements was that Clark's summary indicated that Christy Coffey grabbed the barrel rather than the gun. We find this fact insignificant in light of the overall consistency between the two summaries, which both state that Snyder grabbed the gun first with his right hand and that the gun went off as he and Coffey struggled over it. Clark's summary indicated that the gun went off as Snyder pulled it

away, not because Coffey grabbed the barrel. This information was consistent with his testimony at the preliminary hearing and should not have come as a surprise to defense counsel at trial. It cannot be regarded as undisclosed exculpatory evidence.

When a trial court admits relevant and material evidence at trial which was not disclosed as required by a discovery order, there is no reversible error in the absence of a showing of prejudice to the defendant. *Davis v. Commonwealth*, 230 Va. 201, 204-05, 335 S.E.2d 375, 377-78 (1985); *Stotler v. Commonwealth*, 2 Va. App. 481, 484, 346 S.E.2d 39, 40 (1986). Code § 19.2-265.4 includes the granting of a continuance among the remedies a court may impose when it finds that its discovery order has been violated. There is, however, no duty upon the court to impose sanctions or grant other relief unless the failure to comply was intentional and the party violating the discovery order deliberately attempted to introduce improper evidence. *See Stotler*, 2 Va. App. at 484, 346 S.E.2d at 41. Upon review of the record in this case, we find no indication of an intentional discovery violation by the Commonwealth which necessitated a continuance. Therefore, Snyder's only ground for reversal is based upon prejudice to the fairness of his trial due to deprivation of favorable or exculpatory evidence. *See id.* at 483, 346 S.E.2d at 40. We find no prejudice here. Although a continuance may be appropriate when a litigant is surprised by evidence at trial, "continuances in the midst of trial should not be an everyday occurrence . . . [and] such decisions are entrusted to the sound discretion of the trial court." *Bennett*, 236 Va. at 461, 374 S.E.2d at 311-12.

For the reasons discussed above, we find that the trial court did not abuse its discretion in denying Snyder's request for a continuance and, accordingly, affirm the decision of the trial court.

*Affirmed.*

Keenan, J., and Moon, J., concurred.