**Richmond**

MICHAEL ANGELO STEWART

v.

COMMONWEALTH OF VIRGINIA

No. 0327-89-2

Decided July 10, 1990

COUNSEL

Craig S. Cooley, for appellant

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee

OPINION

**KOONTZ, C.J.**—Michael Angelo Stewart was convicted in a jury trial in the Circuit Court of the City of Richmond of four counts of second degree murder, malicious wounding, and five counts of use of a firearm in the commission of murder. He was sentenced in accordance with the jury's verdict to twenty years imprisonment on three of the murder convictions and fifteen years imprisonment on the fourth, ten years imprisonment on the malicious wounding conviction, four years imprisonment on four of the firearm convictions and two years imprisonment on the fifth. On appeal, Stewart argues that: (1) the trial court erred in limiting his cross-examination of a prosecution witness; (2) preliminary autopsy reports were improperly excluded from the evidence; (3) the trial court erred in denying him a continuance during the course of the trial; (4) the trial court erred in selecting the jury instructions; and (5) the evidence was insufficient to sustain his convictions. For the reasons stated below, we affirm.

The pertinent facts leading to the charges against Stewart are not in dispute. On October 9, 1988, police officers were called to the home of Dwight Nixon in Richmond, Virginia. At the home they found the bodies of four men killed by gunshot wounds: Patrick McGill, Jonathan Brown, Moses Archer, and Dwight Nixon. Each of the men had been shot at least twice, and the bullets recovered from their bodies indicated that at least three different guns had been used in the shootings. Two eyewitnesses, Ava Johnson and Albert Torres, were at the scene when the police officers arrived. Torres was outside in front of the house and Johnson was in the kitchen, crying hysterically.

The day after the murders occurred, Stewart and his uncle, Vernon El-Amin, travelled to Detroit. Stewart and his cousin, Waverly Richardson, were arrested in Detroit on November 13, 1988. Stewart was charged with four counts of first degree murder, one count of attempted murder, one count of malicious wounding, and six counts of using a firearm in the commission of a felony.

At the trial on January 23, 1989, Ava Johnson testified that on the day of the murders she was sitting in the living room of Nixon's house when she heard a knock on the door and saw Stewart, El-Amin and Richardson enter carrying guns. They were wearing jogging suits and rubber gloves. They told her to lie down on the ground and tied her up.

Albert Torres testified that he was in another room and was awakened by people running through the house. He heard El-Amin instructing Archer to "get Nixon." El-Amin and Richardson, armed with their guns, then went upstairs to find Nixon. Nixon came falling down the stairs and was pushed into another room. Torres was told to come out of the bedroom, and El-Amin pushed him down onto the living room floor along with Johnson, Archer, Brown, and McGill. Stewart stood in the doorway with his gun pointed at them. El-Amin instructed Stewart and Richardson to tie up everyone, and Torres was bound and gagged. The gunmen came out of the bedroom after shooting Nixon and began shooting the victims tied up in the living room. Torres was shot in the back and face and pretended to be dead. He heard El-Amin say, "Make sure they're all dead." Torres last observed Stewart standing over McGill and holding a gun.

Ava Johnson was injured in her ear but could not remember hearing a shot next to her. After hearing the evidence, the trial court granted Stewart's motion to strike the charges of attempted murder and use of a firearm involving Ava Johnson.

Stewart's main argument on appeal is that the trial court erred in limiting his cross-examination of one of the police officers, Detective R. T. Fleming, who responded to the scene of the murders. Detective Fleming testified on direct examination to the location of two of the bodies and identified photographs of the crime scene. On cross-examination, he was asked about a vehicle rented by Nixon shown in the photograph of the house and

whether the vehicle had been searched. He stated that he had not searched the vehicle but that it should have been searched by someone. The court then inquired of defense counsel what the relevancy of this questioning was to the case. Defense counsel responded that Mr. Nixon's use of the rental car was relevant to the issue of criminal agency. Upon further questioning, Detective Fleming stated that an "unknown substance" had been found at the house by someone during the course of the investigation, but he did not have a lab report regarding the substance. At this point, the court excused the jury and heard arguments from counsel regarding the relevancy of the cross-examination questioning. Defense counsel asserted that his line of questioning was intended to show that some person other than Stewart could have had a motive for the killings because there was some evidence indicating that Nixon might be a drug dealer. The court found that the cross-examination was not relevant to the identification of Stewart as one of the gunmen and ruled that further questioning on the issue of another possible criminal agent would be limited unless defense counsel could present some evidence that another person had a motive for the killings. The court stated: "What you're trying to put the court in the position to say is, it's all right to kill a drug dealer, and the court's not going to be in that position."

"Limitation of cross-examination is a matter within the sound discretion of the trial court and is subject to review only for abuse of discretion." *Naulty v. Commonwealth*, 2 Va. App. 523, 529, 346 S.E.2d 540, 543 (1986); *see also Fields v. Commonwealth*, 2 Va. App. 300, 308, 343 S.E.2d 379, 383 (1986). While the accused "has a right to cross-examine prosecution witnesses to show bias or motivation" to testify and such inquiries are "always relevant," *Speller v. Commonwealth*, 2 Va. App. 437, 443, 345 S.E.2d 542, 546 (1986), "[w]hen cross-examination becomes the subject of abuse, it should be restricted." *Fields*, 2 Va. App. at 308, 343 S.E.2d at 383. The cross-examination under scrutiny here had nothing to do with Detective Fleming's bias or motivation and therefore was subject to limitation by the trial court without offending the confrontation clause of the Sixth Amendment. *See Williams v. Commonwealth*, 4 Va. App. 53, 77-78, 354 S.E.2d 79, 93 (1987). The cross-examination was not related to matters put in issue by the witness' direct testimony and was therefore properly limited by the court. *See Benson v. Commonwealth*, 190 Va. 744, 753, 58 S.E.2d 312, 315-16 (1950). *See also*

C. Friend, *The Law of Evidence in Virginia* § 20 (3d ed. 1988)(scope of cross-examination generally limited to matters elicited during the examination in chief).

The Commonwealth argues that Stewart cannot challenge the trial court's ruling because he failed to make a proper proffer of the testimony excluded. When cross-examination is limited by the court and the accused challenges the court's ruling on appeal, he or she must make a proper proffer of the excluded testimony. *Whittaker v. Commonwealth*, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977); *see Blount v. Commonwealth*, 213 Va. 807, 811, 195 S.E.2d 693, 696 (1973). A proper proffer may consist of a unilateral avowal of counsel, if unchallenged, or a mutual stipulation of the testimony expected. Absent such acquiescence or stipulation, the error assigned to the rejection of the testimony will not be considered unless it has been given in the absence of the jury and made a part of the record. *Whittaker*, 217 Va. at 969, 234 S.E.2d at 81. We find that defense counsel made a sufficient proffer of the testimony excluded by the trial court by stating his unchallenged unilateral avowal that he expected the testimony to show that controlled substances were discovered at the crime scene which might implicate some other person as the possible criminal agent. However, we find no reversible error in the trial court's limitation of this line of questioning. The testimony regarding controlled substances was not relevant to the jury's determination of Stewart's guilt because there was no evidence linking the "unknown substance" to anyone other than one of the victims. The trial court therefore correctly prevented defense counsel from engaging in a "fishing expedition" for irrelevant evidence regarding the character of the victims.

Stewart contends that the trial court improperly refused to admit the preliminary autopsy reports into evidence. He asserts that the reports contained information as to drug use and were therefore relevant to show the possibility of another criminal agent. Since the defendant did not object to the court's ruling when it was made at trial and the interests of justice do not require that we address it on appeal, this issue will not be considered. Rule 5A:18; *see Mounce v. Commonwealth*, 4 Va. App. 433, 435-36, 357 S.E.2d 742, 744 (1987).

Stewart also argues that the trial court improperly denied his request for a continuance during trial when he was surprised by

the testimony of Albert Torres. On direct examination, Torres testified that he had known Stewart for about a year and had been seen with him at a certain pool hall by the owner, a man named "Sam." At the close of the Commonwealth's evidence, defense counsel requested a continuance in order to question "Sam" prior to presenting evidence for the defense. The trial court denied the motion.

■ The decision to grant or deny a continuance requested either before or during a trial is a matter which lies within the sound discretion of the trial court. *Snyder v. Commonwealth*, 10 Va. App. 67, 70, 389 S.E.2d 727, 729 (1990). The court's discretion "must be exercised in a manner which does not prejudice the defendant's right to a fair and impartial trial or deprive him of his constitutional right 'to call for evidence in his favor' " by denying him "the opportunity 'to investigate and evaluate the evidence in preparation for trial.' " *Id.* at 70-71, 389 S.E.2d at 729-30.

In this case, Stewart asserts that he was prejudiced because the trial court's ruling prevented him from interviewing a potentially valuable witness who might have been able to discredit Torres' identification of him. However, the court was not obligated to grant his request for a continuance based on mere speculation. Stewart does not allege that there was an intentional discovery violation by the Commonwealth, nor does the record indicate that any discovery violation occurred. There is also nothing in the record to indicate that he was deprived of favorable or exculpatory evidence. We therefore find that he was not prejudiced by the court's ruling. Finally, we note that defense counsel still had the option of locating the witness and filing a motion for a new trial based upon after-discovered evidence if the witness actually had valuable information which could have affected the outcome of the trial. *See Whittington v. Commonwealth*, 5 Va. App. 212, 215, 361 S.E.2d 449, 451 (1987).

Stewart argues further that the trial court improperly refused his instruction on circumstantial evidence and his instructions on malicious wounding, which addressed the lesser included offenses of unlawful wounding and simple assault. He also noted his exception to the Commonwealth's instructions on "flight" and "prior felony convictions" which were granted by the court.

■ In reviewing jury instructions, it is the responsibility of the trial court " 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.' " *Darnell v. Commonwealth*, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988)(quoting *Swisher v. Swisher*, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "[I]nstructions should relate to the specific evidence of the case [rather than state] abstract propositions of the law [which] do little to help and much to mystify a jury." *Terry v. Commonwealth*, 5 Va. App. 167, 170, 360 S.E.2d 880, 882 (1987).

■ Stewart's instruction on circumstantial evidence was not warranted. The Commonwealth introduced direct evidence of Stewart's guilt from eyewitness testimony identifying him as one of the gunmen and reporting the incriminating statements made by his accomplices while the crimes were in progress. His instructions addressing lesser included offenses of malicious wounding were properly refused. An accused is entitled to a verdict on a lesser charge than malicious wounding only when the evidence as a whole raises a reasonable doubt that he acted maliciously. *Miller v. Commonwealth*, 5 Va. App. 22, 24-25, 359 S.E.2d 841, 842 (1987). Stewart did not produce evidence that he acted in the heat of passion or that he merely assaulted the victims; he asserted that he was not present at the scene.

■ The Commonwealth's instructions on "flight" and "prior felony convictions" were proper since they were supported by the evidence and the Commonwealth was therefore entitled to have those instructions presented to the jury. "Both the Commonwealth and the defendant are entitled to appropriate instructions to the jury of the law applicable to each version of the case, provided such instructions are based upon the evidence adduced." *Simms v. Commonwealth*, 2 Va. App. 614, 616, 346 S.E.2d 734, 735 (1986).

■ Stewart's final argument is that the evidence in the case was insufficient to sustain his convictions. We review the sufficiency of the evidence "in the light most favorable to the Commonwealth," granting to it "all reasonable inferences fairly deducible therefrom." *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. *Id.* Two eyewitnesses placed Stewart, El-Amin and Richardson

at the scene of the crimes armed with guns. Expert testimony showed that three different firearms were used in the shootings. From this evidence, the jury reasonably could have inferred that Stewart participated in the shootings. Accordingly, the convictions are affirmed.

*Affirmed.*

Keenan, J., and Moon, J., concurred.