COURT OF APPEALS OF VIRGINIA


Present: Judges Baker, Benton and Bray
Argued at Richmond, Virginia


RICHARD DONALD HEGEDUS
                                         MEMORANDUM OPINION[*]
v.         Record No. 1759-96-2      BY JUDGE JOSEPH E. BAKER
                                            JULY 1, 1997
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                         Robert W. Duling, Judge

           Matthew P. Geary for appellant.

           Thomas D. Bagwell, Senior Assistant Attorney
           General (James S. Gilmore, III, Attorney
           General, on brief), for appellee.



     Robert Donald Hegedus (appellant) appeals from a judgment of

the Circuit Court of the City of Richmond (trial court) that

approved a jury verdict convicting him of malicious wounding and

abduction.  The sole issue presented by this appeal is whether

the trial court erred when it refused appellant's request for an

unlawful wounding instruction.  Appellant contends that, on the

evidence contained in this record, he was entitled to the

instruction because unlawful wounding is a lesser-included

offense of malicious wounding.  Appellant concedes that the

Commonwealth's evidence is sufficient to support a malicious

wounding conviction if the jury had been properly instructed and

elected to reject his evidence.  However, he asserts that without

proper instruction, the jury was denied the opportunity to assess

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

the totality of the evidence as it related to unlawful wounding.

When we consider a trial court's refusal to grant a proffered instruction, we must review the evidence with respect to the refused instruction in the light most favorable to the appellant. Seegars v. Commonwealth, 18 Va. App. 641, 643, 445 S.E.2d 720, 722 (1994). Then, "[i]f [the] proffered instruction finds any support in credible evidence, its refusal is reversible error." McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975).

## I.  Carolyn Ragland's Testimony

Carolyn Ragland (Ragland) and appellant met at an adult nursing home where appellant was a patient and Ragland was an employee. The two commenced a relationship in March 1995, despite the fact that Ragland was married. In June 1995, Ragland discontinued the relationship with appellant because she "needed space."

At appellant's request, Ragland went to appellant's apartment around midnight on June 17, 1995 to pick up some things she had left there. During her visit, appellant became violent, struck her with his hands, and threatened to kill her. She repeatedly asked to leave but appellant would not let her because he feared that she would go to the police. Ragland testified that appellant forced her to have sex with him.

In an attempt to escape, Ragland picked up a hammer to use against appellant. Appellant took the hammer from her and a

- 2 -

struggle ensued.  Ragland said she pulled off appellant's glasses and "he hit me, not as hard as you would hit with a hammer, but he hit me and I started bleeding everywhere."  Ragland added that appellant hit her only once with the hammer.[1]  Ragland finally escaped at around 7:00 a.m., wearing only one of appellant's shirts.  According to Ragland, she had a gash in her head that needed stitches.  On cross-examination, Ragland added that the hammer "finally slipped out of [appellant's] hand because [she] was fighting him."

## II.  Appellant's Testimony

Testifying in his own behalf, appellant gave an account that differed substantially from Ragland's testimony.  Appellant testified that he told Ragland he desired to return to the type of relationship he had previously enjoyed with her.  He told her he "wished [they] were a little closer like [they] had been." Appellant talked with Ragland "a little bit more," and then acknowledged that he was sorry they could not get "a little closer."  He told Ragland that he would leave Richmond because she was the only reason he was staying in Richmond.  Appellant claimed that Ragland responded by saying, "we [will] talk about it in the morning."  Appellant testified that he and Ragland then had consensual sex.

---

[1]James Foster, a detective with the Richmond Police Department, examined Ragland at a Richmond hospital.  He testified that he noticed a hammerhead-shaped indentation in Ragland's skull.

Afterwards, appellant noticed a ten dollar bill was missing from his dresser and became suspicious that Ragland had taken it. He found what he believed to be his ten dollar bill inside Ragland's wallet. Appellant said he confronted Ragland about the money, told her to leave the apartment, and began to remove his apartment key from her key ring. Ragland approached him from behind and began to hit him with a hammer.

Appellant slapped her with the back of his hand, causing her mouth to bleed. Ragland began to call appellant by her husband's name, "Junie," and continued to swing at appellant with the hammer. He pulled her hair, grabbed her by the chin and pushed her onto the bed. Appellant said that he and Ragland began to struggle for the hammer and "during the struggle, it came out of [their] hands and glanced across the top of her head."

### III. Analysis

Unlawful wounding is an offense composed entirely of elements that are elements of the greater offense of malicious wounding. See Miller v. Commonwealth, 5 Va. App. 22, 359 S.E.2d 841 (1987). Therefore, unlawful wounding is a lesser-included offense of malicious wounding. The only distinction between the two crimes is that malicious wounding includes the additional element of malice. See Barrett v. Commonwealth, 231 Va. 102, 105-06, 341 S.E.2d 190, 192 (1986).

In Thomas v. Commonwealth, 186 Va. 131, 139, 41 S.E.2d 476, 480 (1947), the Virginia Supreme Court defined malice as follows:
Malice . . . includ[es] not only anger,

hatred and revenge, but every other unlawful
and unjustifiable motive.  It is not confined
to ill-will towards one or more individual
persons, but is intended to denote an action
flowing from any wicked and corrupt motive, a
thing done malo animo, where the fact has
been attended with such circumstances as
carry in them the plain indications of a
heart regardless of social duty, and fatally
bent on mischief.  And therefore malice is
implied from any deliberate or cruel act
against another, however sudden.

However, "[m]alice and heat of passion are mutually
exclusive; malice excludes passion, and passion presupposes the
absence of malice."  Barrett v. Commonwealth, 231 Va. at 106, 341
S.E.2d at 192.  Heat of passion may be founded upon rage, fear,
or a combination of both.  Id.  "In order to determine whether
the accused acted in the heat of passion, it is necessary to
consider the nature and degree of provocation as well as the
manner in which it was resisted."  Miller, 5 Va. App. at 25, 359
S.E.2d at 842.  "If all of the evidence demonstrates that the
accused reflected or deliberated, that his passion cooled, or
that there was reasonable time or opportunity for cooling, then
the wounding is attributable to malice and not heat of passion."
Id.

In reviewing jury instructions, it is the responsibility of
the trial court to see that the law is clearly stated and that
the instructions cover all the issues fairly raised.  Stewart v.
Commonwealth, 10 Va. App. 563, 570, 394 S.E.2d 509, 513 (1990).
A criminal defendant is entitled to jury instructions for all
lesser-included offenses supported by the evidence.  Kauffman v.

Commonwealth, 8 Va. App. 400, 409, 382 S.E.2d 279, 283 (1989);
see also Jones v. Commonwealth, 218 Va. 757, 759, 240 S.E.2d 658,
660 (1978) cert. denied, 439 U.S. 892 (1978). "A jury, not the
trial court, weighs the evidence and assesses the credibility of
the witnesses. It is immaterial that the jury might have
rejected the lesser-included offense." Barrett, 231 Va. at 107,
341 S.E.2d at 193.

> The jury is not required to accept, in
> toto, either the theory of the Commonwealth
> or that of an accused. They have the right
> to reject that part of the evidence believed
> by them to be untrue and to accept that found
> by them to be true. In so doing, they have
> broad discretion in applying the law to the
> facts and in fixing the degree of guilt, if
> any, of a person charged with a crime.

Id. (quoting Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1,
4 (1958)).

The jury could have rejected the self-defense evidence
offered by appellant and then have found that appellant's actions
resulted from emotion or heat of passion rather than malice.
Ragland's testimony suggests an unprovoked assault by appellant.
Appellant's testimony suggests that he was simply defending
himself against Ragland's attack. It is not inconceivable that
the jury could have concluded that appellant was reasonably
provoked by the theft of his ten dollar bill and attacked Ragland
in the heat of passion. Moreover, both Ragland and appellant
testified that Ragland, not appellant, first grabbed the hammer.
In addition, the evidence was susceptible to a reasonable

interpretation that Ragland's injury from the hammer occurred inadvertently during appellant's struggle with Ragland for the hammer.  Therefore, we hold that the proffered instruction is supported by the record.

Viewing the evidence presented at trial in the light most favorable to appellant's proffer of an unlawful wounding instruction, the trial court erred when it refused to instruct the jury on the lesser-included offense of unlawful wounding. Accordingly, for the reasons stated, the judgment of the trial court is reversed and the case is remanded to the trial court for such further action as the Commonwealth may be advised.

<u>Reversed and remanded.</u>