COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Elder and Frank
Argued at Chesapeake, Virginia


KENNETH OLIVER WASHINGTON

MEMORANDUM OPINION[*] BY
v.    Record No. 2157-99-1       JUDGE JAMES W. BENTON, JR.
                                      JANUARY 9, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Edward L. Hubbard, Judge

Charles E. Haden for appellant.

Stephen R. McCullough, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


A jury convicted Kenneth Oliver Washington of assault and battery of a police officer. Washington contends the trial judge should have admitted a tape recording of the incident into evidence. We agree; therefore, we reverse the conviction and remand for a new trial.

I.

A grand jury indicted Washington on charges of assault and battery of a police officer, see Code § 18.2-57(C), and attempting to impede a police officer in the performance of his duties, see Code § 18.2-460(B). The evidence at trial proved that on the evening of January 13, 1998, six City of Newport News police

    * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

officers executed search warrants for drugs, which identified the places to be searched as the person of Mickey Clayborn and the residence of Washington's sister.  Officer J.W. Holloway, who knocked on the door of the residence, wore "a blue and green two-tone windbreaker-type jacket, a green Philadelphia Eagles ballcap and pair of khaki corduroy pants."  The other officers wore garb bearing the word "Police" in various places and a gold badge.  After Holloway "was notified that someone was coming to the front door," the other officers repositioned themselves around a bush behind Officer Holloway.

When Washington opened the door, Holloway said "Hey, Mickey, what's up?"  As the door was opening, Holloway entered the residence, announced "Police, search warrant," and instructed Washington to "Let me see your hands, show me your hands."  He testified that as he spoke these words he put his hand on Washington's chest, forced Washington back, and drew his firearm.

The other officers ran into the room behind Holloway announcing, "Police, search warrant."  Another officer testified that "[o]nce the door was opened, [the officers made] a dynamic entry . . . to get into the residence and saturate the residence with as many detectives as possible."  Their objective was to enter quickly and secure the premises.

Holloway and other prosecution witnesses testified that a scuffle ensued after Washington, whom they believed to be Mickey Clayborn, grabbed Holloway's gun.  One officer testified that two

-

other officers shouted, "Drop the gun, stop fighting, police, drop the gun," repeatedly during the struggle. The struggle continued from one room down a hallway to another before the police knocked the gun away from Washington and subdued him in the kitchen.

In his defense, Washington testified he was visiting his sister at 6:00 p.m., the time of the search. Just as he completed dialing the telephone number of a friend from the kitchen, he heard a noise at the door that "wasn't just a knock, it was a bam." He put the telephone down and responded to the door. He testified that when he opened the door, a person dressed in civilian clothes rushed into the dark living room followed by other men. He said he did not know who they were and did not understand what they were saying because "[t]here was a whole lot of noise." The persons rushing into the living room never identified themselves as police and pointed guns at his head. He testified that he grabbed the man's wrist to defend himself because he was scared. He denied grabbing the gun and disputed the officers' testimony about what was said. He testified that he ceased resisting as soon as possible after realizing the intruders were police officers.

During Washington's testimony, defense counsel sought to introduce a tape recording of the incident. Washington testified that the answering machine of the individual he was calling when the police arrived recorded the incident. He sought to introduce a copy of that recording. Washington's

-

counsel represented to the trial judge that he retained the original tape recording.

The trial judge refused to allow the recording into evidence ruling that defense counsel failed to lay a proper foundation for it. The judge stated, "I don't have any evidence to indicate anything reliable about the tape, and then [Washington] records that tape off her machine, off the original." The trial judge stated a concern that no expert or operator could testify as to the range and power of the recording device. Therefore, he refused to allow the admission of the recording.

At the conclusion of the evidence, the jury acquitted Washington of impeding the officers in the performance of their duties and convicted Washington of assault and battery of a police officer. The jury recommended the mandatory minimum confinement of six months.

## II.

Washington appeals the judge's refusal to allow the recording in evidence. The Commonwealth argues that this appeal must fail because Washington did not make a proffer of the evidence contained in the audio tape. Washington concedes in his brief that his "trial counsel refrained from . . . formally making a proffer of the transcript [of the tape recording] in open court because he feared antagonizing the judge more than he already had." He argues, however, that the record contains

-

evidence sufficient to put the trial judge on notice as to the contents of the recording.

"[W]hen testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer." Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977). The requirement for a proffer "is to assure that the record will be complete." Lowery v. Commonwealth, 9 Va. App. 304, 308, 387 S.E.2d 508, 510 (1990). A proper proffer takes one of three forms: (1) a unilateral avowal of counsel, if unchallenged; (2) a mutual stipulation of the parties; or (3) the taking of testimony of the witness outside the presence of the jury. Id. at 307, 387 S.E.2d at 510.

In this case, Washington testified concerning the events and statements during the officer's entry. He responded affirmatively when asked if the "events" of the night had been recorded. He testified that the audio tape in question recorded those events. Thus, he implicitly asserted that the audio tape supported his version of events to which he testified before and after the proffer. The prosecutor never challenged this assertion that the tape would support and illustrate Washington's testimony; she merely challenged the foundation that his attorney laid to have the tape admitted. In fact, Washington's entire testimony about the events of that night

-

serves as a proffer for the audio tape that allegedly recorded those events.

In <u>Whittaker</u>, the Supreme Court addressed whether a criminal defense attorney had made a sufficient proffer when seeking to elicit answers from a prosecution witness about criminal sentences he had served. Defense counsel stated to the judge what he thought the sentences were and that the witness had received lenient treatment from the prosecution in exchange for testimony. 217 Va. at 967, 234 S.E.2d at 80. In applying the rules outlined above, the Court found that proffer sufficient. <u>Id.</u> at 969, 234 S.E.2d at 81.

In <u>Stewart v. Commonwealth</u>, 10 Va. App. 563, 394 S.E.2d 509 (1990), we addressed whether a defendant could question witnesses in a murder trial about an unknown substance found at a murder scene. The defendant sought to prove the victim was a drug dealer in order to prove that other individuals may have had motives for killing him. <u>Id.</u> at 567, 394 S.E.2d at 512. Although we held that such questioning was inappropriate, nevertheless, we ruled that "defense counsel made a sufficient proffer of the testimony excluded by the trial court by stating his unchallenged unilateral avowal that he expected the testimony to show that controlled substances were discovered at the crime scene which might implicate some other person as the possible criminal agent." <u>Id.</u> at 568, 394 S.E.2d at 512.

-

In this case, the police testified as to the events. Washington also testified as to his version of the same incident. He and his counsel asserted to the trial judge that a tape recording existed of the events. That was a sufficient proffer of what the evidence would show. Furthermore, both the trial judge and we know what is being considered in this case. Washington and the officers testified about what was said in the apartment. The recording was offered to demonstrate the events about which Washington and the officers were testifying. If the purpose of the proffer is to assure a complete record, then the discussion between the parties and the trial judge in this case fulfills that purpose and provides a complete record.

### III.

The trial judge ruled it was necessary to have an expert authenticate the recordings. The judge asked, "Do we have anybody, an expert or something, indicating the range that thing would pick up, the decibels it would pick up, what its range is and the distance that that range would travel, anything like that?" Later, he stated that he would not admit the tape "unless I've got somebody here that would indicate to me what the range of the tape was, not only the distance but the decibel and that sort of thing, it's no good. For all I know it could only pick up a foot and a half from the receiver, the voices. I don't know if they're on the other side of the room." Washington contends that the trial judge erred in refusing to

-

admit the tape recording into evidence by applying the wrong standard for the admission of such evidence.

In Virginia, the rules of admissibility are well established.

> A proper foundation must be laid for the introduction of all evidence.  The burden is upon the party offering real evidence to show with reasonable certainty that there has been no alteration or substitution of it.  But, the burden is not so absolute that one must eliminate all possibility of tampering.

Horsley v. Commonwealth, 2 Va. App. 335, 338, 343 S.E.2d 389, 390 (1986) (citation omitted).  Moreover, in the case of evidence, such as a photograph, that records a scene or an event, a witness may authenticate that evidence by stating that it accurately depicts what he or she observed.  See State Farm Mut. Auto. Ins. Co. v. Futrell, 209 Va. 266, 271, 163 S.E.2d 181, 185 (1968).

In Witt v. Commonwealth, 15 Va. App. 215, 220, 422 S.E.2d 465, 469 (1992), we held that the prosecution had properly authenticated audio tapes of conversations between the defendant and a police informant.  A prosecution witness testified that he transferred some of the conversations from reel to reel tapes to cassette tapes, that a typist transcribed the contents of all the recordings and that he reviewed the typist's work to ensure its accuracy.  Id.  Such testimony "sufficiently showed" that the "tapes had not been altered or substituted."  The informant,

-

who participated in the taped conversations, testified that the tape recordings were accurate.  Id.  We required no technical testimony about the range or power of the recording devices.

In this case, Washington testified in a manner similar to that of the prosecution witness in Witt.  He stated that his friend's answering machine recorded the events of the evening and that he made a recording of that tape, presumably because, as in Witt, a new recording would be easier to play for the jury.  He testified that the recording captured the events of the evening.  His counsel also represented to the trial judge that Washington had the original tape.  Such testimony was sufficient to ensure with reasonable certainty that the recordings had not been altered or substituted.  Therefore, the trial judge erred when he rejected this recording as evidence.

## IV.

The Commonwealth asserts that even if the trial judge erred in excluding this evidence, the error is harmless.  Because the exclusion of evidence would be a nonconstitutional error, it is harmless if it plainly appears from the record and the evidence given at trial that the error did not affect the verdict.  Code § 8.01-678; Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc).

The Commonwealth asserts that the error is harmless because the tape recording merely repeats what Washington said on the stand and, therefore, is redundant.  While it is true that the

-

evidence at issue was illustrative of Washington's testimony, such a character does not render the evidence redundant.  "Other evidence of a disputed fact, standing alone, does not establish that an error is harmless."  Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345 (1992).

In this case, the jury's determination of the sufficiency of proof involves the jury's assessment of the credibility of the witnesses.  See Waller v. Commonwealth, 22 Va. App. 53, 61, 467 S.E.2d 844, 848 (1996).  The jury had to resolve differences in testimony between the police officers and Washington.  By convicting Washington, the jury resolved those differences against him.  With the aid of the tape recordings, the jury might well have found Washington more credible and returned a verdict in his favor.  Indeed, the jury apparently believed some of Washington's testimony in acquitting him of the charge of attempting to impede the officers in the performance of their duties.  Thus, we cannot say that this error was harmless.  See id.

V.

For these reasons, we reverse the conviction and remand to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

-