COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Huff, Causey and Senior Judge Clements
Argued by videoconference

DANIELLE COKER

v.        Record No. 0048-21-1

CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION* BY
JUDGE DORIS HENDERSON CAUSEY
FEBRUARY 8, 2022

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Michael A. Gaten, Judge

Charles E. Haden for appellant.

L. Olivia Wiggins, Assistant City Attorney II (Cheran Cordell Ivery,
Hampton City Attorney; David S. Dildy, Guardian *ad litem* for the
minor children, on brief), for appellee.

Danielle Coker ("mother") appeals orders entered by the Circuit Court of the City of

Hampton ("circuit court") terminating her parental rights with respect to her children, A.C., G.C.,

and E.C. ("children"). On appeal, mother argues the City of Hampton Department of Social

Services ("DSS") failed to prove by clear and convincing evidence that the criteria for termination

of parental rights set forth in Code § 16.1-283(C)(2) had been satisfied and that termination was in

the best interest of the children. Additionally, mother argues the circuit court erred in sustaining

DSS' objection and limiting the scope of mother's cross-examination of Samantha Burke, a DSS

social worker, about the relative placement process and investigation under the Interstate Compact

on the Placement of Children ("ICPC") of the children's maternal grandparents, Gail Lasko and

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Charles Lasko (the "Laskos"). For the reasons set forth below, we affirm the decisions of the circuit court.

## I. BACKGROUND[1]

Mother and Oscar Coker ("father") are the biological parents of A.C., G.C., and E.C., who were respectively ten years old, four years old, and two years old at the time of the trial and are the subjects of this appeal.[2] DSS became involved with the family in February 2019, after father overdosed on drugs in front of the family. In the months following, mother tested positive for cocaine on three separate occasions, and the children entered foster care in June 2019.

DSS initially sought to return the children to the custody of both parents. This goal required, among other things, the parents' participation in substance abuse treatments and random drug screens. Due to father's lack of participation and continued drug use, DSS eliminated him as a placement option. In contrast, "mother participated in all service[s] . . . recommended by [DSS]," and DSS noted her ongoing cooperation and engagement. She completed a parenting capacity evaluation and a substance abuse evaluation. She also participated in parenting classes, twelve-week nurturing courses, weekly substance abuse treatment groups, reunification services, and weekly therapeutic supervised visitations with the children. Additionally, mother made progress in other areas. She found stable employment and housing, and in July 2020, separated from father to ensure that his lack of commitment to the foster care service plan and continued drug use would not affect the chances of the children

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues the mother has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Father did not appeal the circuit court's orders.

being returned to her. Notwithstanding her progress in other areas, however, she continued to test positive for drugs. She tested positive five times between February 2019 and August 2020 and missed at least seven random drug screenings scheduled by DSS. Due to the continued drug use, DSS removed mother from consideration as a placement option.

DSS, as required, investigated several relatives, some of whom lived out of state, toward the secondary goal of relative placement. A local paternal aunt expressed interest in taking custody of the children.[3] For several out-of-state relatives, DSS initiated the ICPC process, a prerequisite to the children's placement with an out-of-state family member. Among the available out-of-state relatives were the Laskos, who lived in Florida, a paternal uncle, and a maternal aunt. In July 2020, after learning it was likely the children would return home, the family members each communicated to DSS that they no longer wanted to be considered as placement options. The Laskos cited their age and poor health as their reasons for withdrawing. After learning of mother's relapse and that the children would not return home, the Laskos communicated to DSS that they again wanted to be considered as a placement option. The paternal aunt indicated the same. The aunt explained that "all three of them was too much for her to handle," and stipulated that she "was not willing to take custody . . . if the parental rights remained intact." At a permanency planning hearing on October 29, 2020, the circuit court found that there were no "viable, approved relative placement options," including the Laskos. The circuit court entered orders approving a permanency goal of relative placement/adoption and directed DSS to file for termination of parental rights.

In November 2020, the Hampton Juvenile and Domestic Relations District Court terminated mother's parental rights to the children. Mother appealed the termination orders. On

---

[3] After the paternal aunt had expressed interest in being a placement option, DSS arranged for the children to visit her. DSS supervised the initial visits, which progressed to weekend visits and a month-long visit in the summer.

January 12, 2021, mother failed to report for a mandatory drug screening. The next day, the circuit court heard mother's appeal, even though she was not present for the hearing.[4] DSS stated that it "could not achieve relative placement" with the Laskos because the ICPC process had been stopped and would have to be reinitiated. DSS further explained that it was "too late" to restart the ICPC process because of the "requirements of the timeline." DSS concluded that the "only way to [move forward was] to terminate parental rights."

DSS' only witness was Burke. Burke testified that the decision to seek termination of parental rights mostly derived from mother's continued drug use, particularly of cocaine. On cross-examination, mother's counsel inquired about the ICPC process for the Laskos. Specifically, counsel asked what Ms. Lasko had done to comply with the ICPC process and whether the ICPC investigation concluded she and her husband were suitable relative placement options. DSS objected to the proposed testimony, arguing that "what did or didn't happen with the ICPC process [was] really irrelevant" after the Laskos had communicated they no longer wanted to be a placement option. Mother's counsel responded that the testimony was relevant for consideration of "[DSS'] efforts towards identifying relatives," especially because the Laskos had renewed their willingness to accept custody as a placement option for the children. DSS countered that the renewed interest came "too late," as they were at the "end of the timeline." The circuit court sustained DSS' objection but allowed mother's counsel to proffer the expected testimony of Burke. Mother's counsel proffered that the Laskos were "attempting to work with the agency in Florida." Counsel further explained that he was "trying to lay out what any worker or agent or participant here knows about what happened with that connection, because obviously there's some kind of disconnection." Counsel concluded the proffer by arguing that the

---

[4] Mother's counsel was present.

testimony was relevant because "[w]e need to establish on the record what the efforts of [DSS] were to involve and identify other placement options."

At the conclusion of all the evidence, mother's counsel did not renew her motion to strike but argued that she had substantially complied with DSS' requirements. Counsel asserted that termination of mother's parental rights was not in the children's best interests. After hearing all the evidence and arguments, the circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2) and entered final orders. The court reasoned termination of parental rights was appropriate as mother's drug use, even if it was only "one slip-up," was a "substantial defect" in mother's efforts to substantially remedy the conditions that led to the children's placement in foster care. This appeal follows.

## II. ANALYSIS

### A. The Circuit Court Did Not Err in Terminating Mother's Parental Rights.

Mother argues that her cooperation with DSS and participation in the ordered rehabilitative services amount to clear and convincing evidence of substantial progress toward the goals set forth in the foster care plan and as required by Code § 16.1-283(C) and that the circuit court erred in finding to the contrary. Mother insists that she did everything DSS asked of her and that DSS "rushed" to terminate her parental rights after a "single lapse from sobriety."

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court," in this case, DSS. *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). When reviewing a trial court's decision to terminate parental rights, we presume the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." *Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 7 (2005)

(quoting *Farley v. Farley*, 9 Va. App. 326, 329 (1990)). "It is critical to understand that regardless of what subsection of Code § 16.1-283 [DSS] proceeds under, it must prove each of its allegations by clear and convincing evidence before the . . . court may terminate a parent's parental rights to his or her child." *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 342, 347 (2012).

Code § 16.1-283(C)(2) authorizes a court to terminate parental rights if the court finds by clear and convincing evidence (1) the termination is in the best interest of the child and (2) the parent was unwilling or unable to substantially remedy the conditions that led to the child's placement in foster care.

In analyzing the first prong, the circuit court must consider:

> the age and physical and mental condition of the child; the age and physical and mental condition of the parent; the relationship existing between the parent and the child; the needs of the child; the role the parent has played, and will play in the future, in the upbringing and care of the child; and any other such factors that are necessary.

*Thach*, 63 Va. App. at 169. If the court determines by clear and convincing evidence that termination is in the child's best interests, the circuit court then moves to the second prong. *Id.* at 170.

Under the second prong, the court must find clear and convincing evidence:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to *or required continuation* of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2) (emphasis added); *see also Thach*, 63 Va. App. at 170.

Clear and convincing evidence in the record supports a finding that it was in the children's best interest to terminate mother's parental rights and that mother, without good cause,

failed to, within a reasonable time, substantially remedy the conditions that led to the children's removal. The children were placed into foster care due to substance abuse affecting parental capacity and remained there for approximately nineteen months. Notwithstanding mother's participation in the services offered by DSS and success in finding sustainable housing and gainful employment, there is little evidence to support that, in those nineteen months, she made substantial progress toward overcoming her drug use. Contrary to her contentions, mother did not have a "single lapse in sobriety." She tested positive for illicit substances, namely cocaine, five times and, the day before the circuit court hearing terminating her parental rights, failed to report for drug testing for an eighth time. The circuit court reasonably could have concluded that each failed and missed test represented that mother was not prepared to resume custody of the children. Thus, the circuit court did not err in recognizing this pattern of behavior as a "substantial defect" to the objective of returning the children to mother's care and in declining to wait, after nineteen months, for mother to remedy her drug use. "It is clearly not in the best interest[] of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)). Therefore, after analyzing each prong, we find the circuit court did not abuse its discretion in terminating mother's parental rights.

B. Mother's Insufficient Proffer Does Not Allow Us to Determine Whether the Circuit Court Erred in Limiting Burke's Cross-Examination.

We next turn to the circuit court's decision to sustain DSS' objection to the cross-examination of Burke.[5] Mother argues that the precluded questions and testimony were

---

[5] We note that while mother briefed this issue, she failed to include it as an assignment of error in her designation of the appendix. Appellants who seek review in this Court are required to file either (1) a designation of the contents of the appendix to which all parties agree or (2) a

relevant to the issues of whether DSS made reasonable efforts toward less severe alternatives, such as relative placement, before resorting to the termination of parental rights and whether the Laskos were a suitable relative placement option.

"When cross-examination is limited by the court and the accused challenges the court's ruling on appeal, he or she must make a proper proffer of the excluded testimony." *Stewart v. Commonwealth*, 10 Va. App. 563, 568 (1990). "The failure to proffer the expected testimony is fatal to [the] claim on appeal." *Molina v. Commonwealth*, 47 Va. App. 338, 367-68 (2006). A party must proffer the "'testimony [she] expected to elicit,' rather than merely [her] theory of the case." *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006) (citation omitted) (quoting *Clagett v. Commonwealth*, 252 Va. 79, 95 (1996)). The proffer must "[allow] us to examine both the 'admissibility of the proposed testimony,' and whether, even if admissible, its exclusion

document stating the assignments of error and designating contents for the appendix which are relevant to the assignments of error. *See* Rule 5A:25(d). Still, we proceed to the merits of this issue despite this procedural shortcoming. First, DSS does not claim any prejudice due to the exclusion of this assignment of error from the designation of the appendix. Second, DSS does not allege that the appendix failed to include everything related to the assignments of error. Third, both parties briefed and orally argued this assignment of error. *See Hammock v. Halifax Cty. Dep't of Soc. Servs.*, No. 0160-19-2, slip op. at 5 n.8 (Va. Ct. App. Mar. 3, 2020) (per curiam) ("declin[ing] to find that appellant's assignments of error [were] waived" where appellant "did not file a designation of appendix or a statement of the assignments of error, as required by Rule 5A:25(d)" and "[t]he [appellee] did not claim that it was 'prejudiced by the failure [to make these filings]' or that the appendix failed to include 'everything germane to the disposition of [appellant's] appeal" (quoting *Wilcox v. Lauterbach Elec. Co., Inc.*, 233 Va. 416, 420 (1987))).

Further, "the Rules promulgated by the Supreme Court are supposed to be 'designed to achieve the just, speedy, and inexpensive disposition of all litigation in [the Court of Appeals of Virginia] consistent with the ends of justice.'" *Whitt v. Commonwealth*, 61 Va. App. 637, 658 (2013) (*en banc*) (alteration in original) (quoting Code § 17.1-403). With these principles in mind, we treat the briefing and argument as an unopposed motion to add an assignment of error in this appeal of right, and we grant that motion. *Cf. Henderson v. Cook*, 297 Va. 699, 707 (2019) (recognizing that in an appeal by petition, the appellate court can permit the amendment of a granted assignment of error); *Riner v. Commonwealth*, 40 Va. App. 440, 454-55 (2003) (concluding that the Court may "exercise[e] jurisdiction over assignments of error added to the petition, with leave of court, at a later date" provided that "the Court has acquired jurisdiction over the appeal via timely filing of the original petition for appeal"), *aff'd on other grounds*, 268 Va. 296 (2004).

'prejudiced' the proffering party." *Id.* (quoting *Molina*, 47 Va. App. at 368). "[E]ven when 'we are not totally in the dark concerning the nature of the evidence,' we still must 'know enough about the specifics' to be able to 'say with assurance' that the lower court committed prejudicial error." *Id.* at 22 (quoting *Smith v. Hylton*, 14 Va. App. 354, 358 (1992)). An inadequate proffer "precludes us from knowing whether any such alleged error would be considered prejudicial under harmless error principles." *Id.* at 23.

We do not reach whether the proposed line of cross-examination was relevant because mother's proffer is insufficient. Mother's counsel offered no specifics and did not proffer any questions and expected answers. Instead, mother's counsel proffered his "theory of the case." The proffer does not provide how the Laskos' (or any other family member's) suitability was different than the findings established in the evidence of record or how DSS failed to meet its duty to investigate relative placement options.

By law, for an out-of-state family placement of a child to occur, the placement must have been approved through the ICPC process. *See* Code § 63.2-1000(a). The proffer does not explain whether this legal requirement had been met, was only partially complete, or was inapplicable to the facts of this case. The proffer does little to challenge the evidence of record. Even though mother's counsel was not permitted to question Burke about the ICPC investigation into the Laskos, the circuit court heard evidence of the steps DSS took to initiate the ICPC process. Such evidence included that the Laskos had voluntarily withdrawn from the ICPC process because they no longer wanted to be considered a relative placement option and that, months later, they told DSS that they changed their minds. Further, the circuit court had previously found the Laskos were an unviable placement option at the permanency planning hearing. Additionally, the proffer fails to specify how DSS' effort to locate relative placements as required by statute was inadequate. To the extent the proffered testimony attacked DSS'

efforts to identify relative placement options generally, the record holds to the contrary. The record is replete with evidence that DSS reasonably tried to place the children with family members. Attempts to connect with father were unsuccessful as he was noncooperative and continued to use drugs. Efforts to connect with other relatives were met with refusal, withdrawn interest, stipulated terms, or silence.

It appears that the sole purpose of the excluded evidence was to inquire whether the Laskos were approved through the ICPC process within the statutory timeline for termination of parental rights and whether DSS had made reasonable efforts to locate relative placements. The proffer is insufficient to determine what happened with the ICPC process and whether DSS made reasonable efforts to locate relative placement options because the meager proffer is conclusory and nonspecific. The proffer gives no indication that the Laskos' suitability as a placement option had improved since they withdrew themselves from placement consideration, and it fails to detail how DSS' efforts to locate relative placements fell short of the requirements provided in Code § 16.1-283. Mother's counsel merely proffered her "theory of the case." As such, assuming the admissibility of the precluded testimony, we are left to only speculate the prejudicial effect of its absence. Thus, we cannot conclude the exclusion of the evidence amounted to reversible error.

In this case, mother had a fair trial on the merits and substantial justice was reached. The record contains evidence that the circuit court considered the suitability of relative placements and that DSS made reasonable efforts to find relative placements. The insufficiency of the proffer precludes a finding of prejudicial error. Accordingly, we presume the circuit court properly weighed all the evidence, considered the mandatory statutory factors, and ruled based on the children's best interest.

III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's orders terminating mother's parental rights and remand the case to the circuit court for the correction of the final termination orders with respect to A.C. and E.C.[6]

*Affirmed and remanded for correction.*

---

[6] The termination orders for A.C. and E.C. mistakenly have the "father" box checked under mother's name on the first page. Clearly, this is a typographical error that the lower court can correct. We therefore remand solely for these corrections to the termination orders. *See* Code § 8.01-428(B).