COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Causey and Frucci
Argued by videoconference

DEIONN DAMIAN GREGORY, S/K/A
 DEIONN ARIY YEL YASHARALLAH BEY

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN

v.      Record No. 0041-25-1

DECEMBER 30, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph C. Lindsey, Judge

Edward A. Fiorella, Jr. (Fraim & Fiorella, P.C., on briefs), for
appellant.

John A. Fisher, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

A jury convicted Deionn Damian Gregory (appellant) of one count of forcible sodomy of

a child under 13 years, one count of aggravated sexual battery, and one count of indecent

liberties with a child under 15 years. Appellant alleges seven assignments of error, many of

which are procedurally barred. We deny the remaining assignments of error on the merits and

affirm his convictions.

BACKGROUND[1]

B.W., the victim, was born in 2005. In 2009, her mother, Jennifer Mason, became

romantically involved with appellant, and appellant moved in with Mason and B.W. The parties

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] "We recite the facts 'in the "light most favorable" to the Commonwealth, the prevailing
party in the trial court.'" *Shahan v. Commonwealth*, 76 Va. App. 246, 250 (2022) (quoting
*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we "discard the evidence of the
accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

married in 2011 and had one son, D.G.  From 2015 to 2018, Mason worked night shifts as a registered nurse.  Appellant also worked some nights from 11:00 p.m. to 7:00 a.m.  Initially, B.W.'s grandmother took care of the children when Mason was at work, but the grandmother died in 2014.  Subsequently, appellant cared for the children while Mason worked.

After her grandmother's death, when B.W. was ten years old, appellant began making B.W. uncomfortable by doing things like brushing past her closely in a narrow hallway of their home.  A few months later, appellant called B.W. into his and Mason's bedroom and showed her "pornographic materials . . . on his phone," asking her to comment.

Things escalated.  Appellant showed B.W. more pornographic material and took her hand and guided her to touch herself, on her "vulva and vagina."  At trial, B.W. recalled feeling frozen and stated that she did not know what to do.  Appellant also touched her "between [her] legs." Later, he told B.W. to take her clothes off when "he [was already] in a robe."

During the abuse, appellant "put his penis in [B.W.'s] mouth" and moved her "head up and down."  In addition, appellant "put his tongue" on B.W.'s vulva.  B.W. also testified that appellant touched her nipples.  These events occurred "pretty much every time [Mason] went to work," which was about "three to five nights a week."

At one point, appellant "tried to put . . . lotion on his penis and . . . insert it . . . anally." After B.W. told him, "It hurts, it hurts," he stopped.  During cross-examination, B.W. stated there was no penetration, "but there was an attempt."  Sometimes, when B.W. objected, appellant would go through her phone and send himself screenshots of anything that he deemed inappropriate.  He also threatened to send the screenshots to her mother.

---

favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Id.* (quoting *Cady*, 300 Va. at 329).

Mason and appellant separated in March 2017, and appellant moved into a nearby apartment. Mason sent B.W. to stay with appellant once or twice a month when she was unable to find another person to take care of the children while she worked. The abuse continued there. In 2018 "around Mother's Day," B.W. told Mason that she did not want to return to appellant's apartment anymore because he said "some really hurtful things." Mason agreed.

In 2018, Mason moved to Florida for school, and she requested an amendment of her visitation agreement with appellant to allow their son, D.G., to come with her. B.W. and D.G. later moved to Florida as well.

At trial, B.W. testified that during the summer between eighth and ninth grade, she told her then boyfriend about the abuse, but she did not tell Mason about it until May 2020.

In 2020, B.W. had trouble sleeping due to her recollections of the abuse. One evening, B.W. "br[oke] down" and "was crying, . . . clearly upset about something that ha[d] happened to her." She told Mason about appellant's actions. The next day, Mason reported the abuse to the police in Florida, who put her in touch "with people in Virginia," and Mason requested protective orders for both children.

In 2023, appellant was charged with one count of forcible sodomy of a child under the age of 13 under Code § 18.2-67.1, one count of aggravated sexual battery under Code § 18.2-67.3, and one count of indecent liberties with a child under the age of 15 under Code § 18.2-370(D).

*Trial*

At the beginning of trial, the court granted a motion to exclude the witnesses pursuant to Code § 19.2-265.1. Mason asked to remain in the courtroom during B.W.'s testimony, but the court denied her request.

During cross-examination of Mason, appellant showed her a copy of a show cause motion she had filed in the Norfolk juvenile and domestic relations district (JDR) court in June 2020. Mason acknowledged that the motion did not mention B.W.'s abuse but asserted that the abuse was brought up during the proceedings. Mason also insisted that the show cause motion was not the only motion she had filed that day and that she had brought a copy of the other document, a motion to amend visitation. Appellant objected to that document because it was not included in the materials he had received from the Norfolk JDR court during discovery.

After reviewing the letter in which defense counsel requested the Norfolk JDR court documents, the court noted that the letter did not request documents relating to appellant himself, but only relating to B.W., D.G., and Mason. The court concluded that "in terms of searching up this information, it wouldn't be one of the three names that you've asked . . . in regards to." The Commonwealth represented that it only learned about the document "this morning" and that it had not intended to use it "unless needed . . . for rebuttal."

Acknowledging that the document was a surprise, the court gave an instruction but did not admit the motion to amend into evidence. The court "believe[d] that this [wa]s the best way to address the issue in a way that . . . allows the probative aspect to come in without the prejudicial aspects." The jury received the following instruction:

> [T]here appears to be a motion that was . . . filed on June 12th of
> 2020, and this is a motion to amend or review an order. In the
> body of this motion that was filed there is one sentence that
> references a sexual abuse charge that is pending in the City of
> Norfolk.

After the Commonwealth's case, appellant moved to strike, arguing that there was no evidence of forcible sodomy by cunnilingus, anilingus, or anal intercourse and therefore the "count or at least that word [should] be stricken, that the jury shouldn't consider that." Appellant conceded that "there [wa]s sufficient evidence regarding fellatio." Further, appellant requested

to strike all of the charges for insufficient evidence because the jury could only "guess or speculate" due to the lack of corroborating evidence. The court denied the motion.

Next, appellant's brother, Aaron Gregory, testified that he used to live with B.W., Mason, and appellant and that he later visited them "about three times a week." He stated that he would sleep in the living room and that he never saw B.W. go into appellant's bedroom and never saw appellant "do anything of a sexual nature" to B.W. He also testified that when he later visited appellant at his apartment, he never saw any "unusual or untoward" behavior.

Appellant inquired whether Aaron was "at the house and around [B.W.]" enough "to form an opinion" on whether B.W. was "a truthful person." The Commonwealth objected, and although appellant argued that reputation evidence was not restricted to community or business reputation evidence, the court sustained the objection. Appellant did not proffer Aaron's testimony.

Appellant testified in his own defense and denied committing the offenses.

The Commonwealth recalled Mason to rebut Aaron's testimony that he had ever lived with her and appellant. Defense counsel objected, asserting that Mason had been present in the courtroom during the defense case. This was based on appellant's assertion that Mason had been in the courtroom, but defense counsel acknowledged he did not see her there. The Commonwealth stated that Mason had remained outside "this entire time" and reminded the court that Mason had wanted to remain during B.W.'s testimony, but the court had denied that request. After the court reporter read the record of that exchange out loud, the court allowed Mason to be recalled.

Mason subsequently testified that she never allowed Aaron to stay at her house and that he never lived with her and appellant. Further, Mason asserted that Aaron visited infrequently and would only stay for a few hours.

Appellant unsuccessfully renewed his motion to strike. Appellant also moved to strike the word "cunnilingus" from the jury instructions and repeated his arguments for the motion to strike. The court denied the motion.

The jury found appellant guilty on all counts.

*Allegation of Jury Misconduct*

Prior to sentencing, appellant moved for an evidentiary hearing to investigate juror misconduct based on Aaron's allegations that he formerly had an online relationship with one of jurors. The Commonwealth opposed the motion, and after a hearing on the issue on July 26, 2024, the court denied the motion "for reasons stated on the record." The record does not contain a transcript of that hearing.

*Sentencing*

At sentencing, the parties agreed that the recommended sentencing range was 7 to 15 years. The Commonwealth also pointed out that there was "an adjusted high end of 22 years, 6 months." During oral argument, appellant objected to the adjusted high end because he was given "five points for not being regularly employed," which was "contrary to the evidence." Appellant further raised an issue with the "prior alcohol and drug treatment" section of the report.

The court sentenced appellant to 3 years of incarceration for indecent liberties, 7 years for aggravated sexual battery, and 20 years for forcible sodomy with 10 years suspended, 3 years of supervised probation, and 20 years good behavior, based on "all circumstances and all information that has been afforded." The sentencing order did not note any objections, nor did appellant move to set aside the sentence.

ANALYSIS

I.  Assignment of Error 1:

Appellant argues that the Commonwealth had a *Brady*[2] obligation to disclose Mason's

motion to amend filed in the Norfolk JDR court.  He further contends that the instruction was an

unfair surprise because the Commonwealth was required to disclose the document under the

discovery order and that "the danger of unfair prejudice substantially outweighed the probative

value [of the document]" and it therefore should have been excluded under Virginia Rule of

Evidence 2:403.[3]  Appellant wanted to exclude the document because it contradicted his

impeachment strategy for Mason.

As a threshold matter, "[n]o ruling of the trial court . . . will be considered as a basis for

reversal unless an objection was stated with reasonable certainty at the time of the ruling, except

for good cause shown or to enable this Court to attain the ends of justice."  Rule 5A:18.  "The

purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial

court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and

retrials."  *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (alterations in original)

(quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)).  "Specificity and timeliness

undergird the contemporaneous-objection rule[ and] animate its highly practical purpose . . . ."

*Bethea v. Commonwealth*, 297 Va. 730, 743 (2019).  "Not just any objection will do.  It must be

both *specific* and *timely*–so that the trial judge would know the particular point being made in

---

[2] Referring to the seminal case, *Brady v. Maryland*, 373 U.S. 83 (1963), in which the Supreme Court of the United States held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  *Id.* at 87.

[3] Rule 2:403 provides that "[r]elevant evidence may be excluded if (a) the probative value of the evidence is substantially outweighed by (i) the danger of unfair prejudice, or (ii) its likelihood of confusing or misleading the trier of fact; or (b) the evidence is needlessly cumulative."

time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "If a party fails to timely and specifically object, he waives his argument on appeal." *Hogle*, 75 Va. App. at 755.

Here, appellant never argued at trial that the Commonwealth violated its *Brady v. Maryland*, 373 U.S. 83 (1963), obligations. Further, even if appellant had raised the issue below, *Brady* holds that only the withholding of exculpatory—not inculpatory—evidence violates due process. *Id.* at 87. The document in question here is clearly not "exculpatory"; it corroborates Mason's testimony against appellant. *Brady* therefore is inapplicable. During trial, appellant also did not contend "unfair prejudice" or that there was a Rule 2:403 issue. We therefore will not consider these arguments on appeal. *See* Rule 5A:18.

As to appellant's argument that the document violated the discovery order, we review a court's decision on the admissibility of relevant evidence for an abuse of discretion. *Atkins v. Commonwealth*, 68 Va. App. 1, 7 (2017). "A reviewing court can conclude that 'an abuse of discretion has occurred' only in cases in which 'reasonable jurists could not differ' about the correct result." *Id.* (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

Appellant argues that, when the court "allowed the jury to receive testimony regarding the content of the document," he was "deprived of his right to fairly prepare his defense" because that constituted "an unfair surprise and unfairly prejudice[d him] on a key defense in his case."[4]

"When a trial court admits relevant and material evidence at trial which was not disclosed as required by a discovery order, there is no reversible error in the absence of a showing of

---

[4] To make this point, appellant cites *Lomax v. Commonwealth*, 228 Va. 168, 173 (1984), in which the Supreme Court found error in a trial court's refusal to grant a continuance when the Commonwealth did not produce a toxicological report of the victim until the day of the trial, the defendant was relying of self-defense, and the report showed a high dosage of a drug that could cause aggressiveness. 228 Va. at 170-71. But in *Lomax*, the evidence was favorable to the defendant. No so here. Further, unlike in *Lomax*, appellant did not request a continuance.

prejudice to the defendant." *Snyder v. Commonwealth*, 10 Va. App. 67, 72 (1990). "There is . . . no duty upon the court to impose sanctions or grant other relief unless the failure to comply was intentional and the party violating the discovery order deliberately attempted to introduce improper evidence." *Id.*

Contrary to appellant's argument, the document in question was not directly relevant to a claimed defense but rather to the impeachment of a witness, i.e., Mason. The document also was collateral in that it was not relevant to appellant or to the victim, B.W. In fact, the motion to amend concerns a visitation agreement for appellant's biological child, not the victim. The instruction only revealed that the document included a reference to "a sexual abuse charge that is pending" in the Norfolk circuit court. That statement corroborates Mason's own testimony that she had mentioned the abuse in the JDR court. *See May v. Caruso*, 264 Va. 358, 363 (2002) (holding that "the exclusion by the trial court of relevant evidence does not constitute reversible error if that evidence is merely cumulative"). Nothing in the record therefore suggests that appellant was prejudiced by that instruction.

Further, the Commonwealth did not intend to introduce the document. In fact, it was the defense's questioning that revealed the motion to amend. The court did not abuse its discretion in giving the instruction concerning the motion to amend. *Snyder*, 10 Va. App. at 72.

## II. Assignment of Error 2:

Appellant posits that the court erred in not allowing Aaron to testify to "his opinion about B.W.'s truthfulness."

"When an appellant claims a trial court abused its discretion in excluding evidence, we cannot competently determine error—much less reversible error—without 'a proper showing of what that testimony would have been.'" *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006) (quoting *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 135 (1999)). "The failure to proffer the

*expected testimony* is fatal to his claim on appeal." *Tynes*, 49 Va. App. at 21 (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 367-68, *aff'd*, 272 Va. 666 (2006)).

Here, appellant claims the court erred in excluding Aaron's testimony about B.W.'s truthfulness. But appellant never proffered what that testimony would have been had the witness testified. As such, this assignment of error is waived. *Tynes*, 49 Va. App. at 21.

### III. Assignment of Error 3:

Appellant argues that the court erred in denying an evidentiary hearing to investigate an alleged untruthful statement by a juror during voir dire, violating his constitutional right to an impartial jury.

On appeal, "[w]hen the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii).

Here, appellant moved for an evidentiary hearing to investigate alleged juror misconduct. When there is an allegation of juror bias, "the trial court should consider the totality of the circumstances and determine whether a party presented credible allegations of bias that undermine the prior determination of impartiality reached by the court at the conclusion of the voir dire process." *Nelson v. Commonwealth*, 41 Va. App. 716, 733 (2003), *aff'd*, 268 Va. 665 (2004). Only "[i]f the claim is reasonable, then the trial court should investigate the allegation by holding an evidentiary hearing at which jurors may testify." *Id.* at 732.

The court heard arguments on appellant's motion on July 26, 2024, and subsequently denied the motion to conduct an evidentiary hearing "for reasons stated on the record." Because we do not have a transcript of the July 26 hearing, we cannot evaluate the court's reasons and factual findings that led to the motion's denial; we therefore will not consider this assignment of error. Rule 5A:8(b)(4)(ii); *Goodpasture v. Goodpasture*, 7 Va. App. 55, 57 (1988) ("If . . . the

transcript is indispensable to the determination of the case, then the requirements for making the transcript a part of the record on appeal must be strictly adhered to." (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986))).

IV. Assignment of Error 4 & 5[5]:

Appellant contends that the court erred by including cunnilingus, anilingus, and anal intercourse in the definition of forcible sodomy and not striking the charge of forcible sodomy because there was no evidence of such acts.[6] He claimed that the instruction, as given, was therefore "likely to inflame the passions of the jurors." Further, he argues that including those acts risked that the jury did not unanimously agree on which act appellant engaged in with B.W.

Appellant never raised the unanimity argument during the proceedings below, and we therefore will not consider that argument here. Rule 5A:18; *Hogle*, 75 Va. App. at 755.

"We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022). "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Id.* at 674-75 (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)). "Whether an instruction 'accurately states the relevant law is a question of law' that we review *de novo*." *Davison v. Commonwealth*, 69 Va. App. 321, 326-27 (2018) (quoting *Sarafin v. Commonwealth*, 288 Va.

---

[5] Assignment of Error 4 alleges that the court erred "in instructing the jury on the charge of [f]orcible [s]odomy where the instruction included the specific acts of cunnilingus, anilingus, and anal intercourse which [were] not supported by the evidence." Assignment of Error 5 alleges that the court erred "in denying the [m]otion to [s]trike the count of [f]orcible [s]odomy." Because appellant makes the same arguments for both assignments of error, we consider them together.

[6] We note that, contrary to appellant's assertion, there is some evidence of anal penetration. B.W. testified that appellant "tried to put . . . lotion on his penis and . . . insert it . . . anally." She stated that he stopped once she said that it hurt. A reasonable jury could conclude that this penetration occurred even though B.W. herself only called it "an attempt."

320, 325 (2014)), *aff'd*, 298 Va. 177 (2019). "The facts regarding a challenged instruction are viewed 'in the light most favorable to the proponent of the instruction.'" *Id.* at 327 (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)).

"[N]ot every fact important to a determination of guilt constitutes an element of the offense." *Id.* at 328 (quoting *United States v. Jockisch*, 857 F.3d 1122, 1127 (11th Cir. 2017)). "[I]f a particular fact is nothing more than a possible means by which a defendant met an element of the offense, then no unanimity is required." *Id.* (quoting *Jockisch*, 857 F.3d at 1127).

In *Davison*, a rape case, this Court found that when "[t]he alternative means of force and incapacity were stated in the disjunctive in the instructions, and the jury was told it had to find that the evidence proved 'each' of the given elements beyond a reasonable doubt," the court did not err by giving its instruction "because, no matter which theory [the jury] accepted, . . . all jurors convicted the defendant of the same offense." *Id.* at 330-31 (second alteration in original) (quoting *Turner v. Commonwealth*, 538 S.W.3d 305, 314 (Ky. App. 2017)).

Code § 18.2-67.1 provides that "[a]n accused shall be guilty of forcible sodomy if he or she engages in cunnilingus, fellatio, anilingus, or anal intercourse with a complaining witness . . . and (1) [t]he complaining witness is less than 13 years of age."

Here, the jury was instructed that the elements of forcible sodomy are "(1) [t]he defendant engaged in cunnilingus, fellatio, anilingus, or anal intercourse" with B.W. and "(2) [B.W.] was less than thirteen (13) years of age at the time of such act(s)."

The inclusion of cunnilingus, anilingus, and anal intercourse in the jury instructions is in harmony with the statutory definition of forcible sodomy under Code § 18.2-67.1. Like in *Davison*, "the alternative means" of fulfilling the first element of the crime were stated in the disjunctive "or," correctly conveying that any one of these acts could fulfill that element of the crime. The instructions further stated that the jury must find "the Commonwealth prove[d] each

- 12 -

and every element of the offense beyond a reasonable doubt." And "[j]uries are presumed to follow their instructions." *Davison*, 69 Va. App. at 331. Finally, appellant also failed to point to any evidence that the inclusion of the different acts inflamed the passions of the jury. Accordingly, the court did not err in including cunnilingus, anilingus, and anal intercourse in the jury instructions on forcible sodomy.

## V. Assignment of Error 6:

Appellant contends that the court erred in allowing the Commonwealth to recall Mason in rebuttal because she had been present in the courtroom during Aaron's testimony.

"[T]he determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." *Atkins*, 68 Va. App. at 7 (alteration in original) (quoting *Adjei v. Commonwealth*, 63 Va. App. 727, 737 (2014)).

Code § 19.2-265.1 requires the exclusion of witnesses following a motion by either party. But "it is within the sound discretion of the trial court to permit the testimony of a witness who has violated an order directing his exclusion from the courtroom." *Brickhouse v. Commonwealth*, 208 Va. 533, 537 (1968).

Here, the Commonwealth recalled Mason to refute Aaron's testimony that he had ever lived with her and appellant. Although appellant claimed that Mason had violated the court's order and remained in the courtroom during Aaron's testimony, defense counsel acknowledged that he had not seen Mason in the courtroom. The Commonwealth represented that Mason remained in the hallway during Aaron's testimony. The court reporter confirmed that Mason had unsuccessfully requested to remain in the courtroom during B.W.'s testimony. The court implicitly found she had not been in the courtroom when it allowed the Commonwealth to recall Mason. *See Commonwealth v. Holland*, 304 Va. 34, 47 (2025) (explaining that "it is an appellate court's function to presume that the trial court made the requisite findings of fact to support its

- 13 -

decision"). Because of that presumption and because it was in the court's discretion to let her testify regardless, the court did not err in allowing the Commonwealth to recall Mason in rebuttal.

## VI. Assignment of Error 7:

Citing Code § 19.2-298.01, appellant argues that the court erred in failing to explain why it imposed a sentence higher than the upper end of the guidelines.

An appellant's failure to object at trial waives the argument on appeal. Rule 5A:18; *Hogle*, 75 Va. App. at 755. Here, appellant objected to the use of the adjusted high end of the sentencing guidelines but not to the court's failure to file a written explanation to its "departure" from the guidelines. Nor does appellant contend the court erred in using the adjusted guidelines. Regardless, Code § 19.2-298.01(F) provides that "[t]he failure to follow any or all of the provisions of this section or the failure to follow any or all of the provisions of this section in the prescribed manner shall not be reviewable on appeal." This assignment of error is therefore without merit.

## CONCLUSION

Because the assignments of error are either waived or without merit, we affirm.

*Affirmed.*

Causey, J., concurring.

Regarding Gregory's first assignment of error, I agree that Gregory's convictions should be affirmed because there is insufficient evidence that Gregory was prejudiced by the trial court's instruction. I would also note, however, that the Commonwealth did violate its discovery obligations when it failed to inform Gregory's counsel of the document in question.

At the time of trial, the Commonwealth was fully on notice that documents related to this custody battle "may [have been] material to preparation of the accused's defense" for the purposes of the discovery rule. Rule 3A:11(b)(3).[7] Therefore, when the Commonwealth learned of the document's existence on the morning of trial, it was obligated to inform Gregory's counsel of this fact, rather than waiting to see if it needed to be produced in rebuttal. *See* Rule 3A:11(h) (continuing duty to disclose relevant information discovered "before or during trial").

Our case law states that "to constitute reversible error, the Commonwealth's late disclosure of inculpatory evidence must prejudice the defendant's case." *Smoot v. Commonwealth*, 37 Va. App. 495, 502 (2002). I am not persuaded that Gregory was prejudiced by the Commonwealth's late disclosure and the trial court's instructions to the jury to an extent that would merit reversal of Gregory's convictions.

Here, though earlier disclosure would have led to a slight tactical difference involving Gregory's mode of cross-examination, the existence of the document ultimately likely *helped* Gregory: the main theory of Gregory's defense was that the victim's accusations had been manufactured as part of the custody proceedings. The document that Gregory complains of showed that the sexual abuse had, in fact, been mentioned as part of those custody proceedings.

---

[7] The Commonwealth became aware of this fact, at the latest, when Gregory's counsel informed the court prior to voir dire that the "crux of our defense" was that the allegations had been made during a contested custody battle.

One of this Court's prior cases, *Smoot*, might appear to suggest that any change in tactics shown by the defense is sufficient to merit reversal. *See id.* ("To show prejudice, the defendant must demonstrate how timely disclosure would have changed his trial strategy *or* affected the outcome of the trial." (emphasis added) (citing *Davis v. Commonwealth*, 230 Va. 201, 204 (1985); *Knight v. Commonwealth*, 18 Va. App. 207, 215 (1994))). But other cases indicate that this Court's consideration should not end at a determination that some tactic would have changed. *See Davis*, 230 Va. at 377-78 (no error if "a discovery violation does not prejudice the substantial rights of a defendant"); *Robinson v. Commonwealth*, 231 Va. 142, 155 (1986) ("[T]he fact that the changed testimony made it more difficult for [the appellant] to advance a theory in conflict with his own statement cannot be viewed as prejudicial to his rights.").

Under the narrow circumstances of this case, I would hold that the late-disclosed document that arguably supported Gregory's theory of the case,[8] and Gregory's change in trial tactics, do not show prejudice. Therefore, I agree that Gregory's convictions should be affirmed.

---

[8] As the majority notes, we are unable to consider Gregory's *Brady v. Maryland*, 373 U.S. 83 (1963), arguments because he did not raise them below.

- 16 -